# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| THERESA VICTORY | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | NO. 18-5170 |
| BERKS COUNTY, *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**  **February 15, 2019**

As we described in our January 15, 2019 Memorandum, Berks County admits treating women inmates classified at the lowest security risk known as "trusty" different than male inmates with the same trusty custody classification. It houses the trusty women in jail cells in the F Block with limited liberty from the locked cells. It houses the trusty men in a separate building known as the Community Reentry Center which is designed to provide substantially more liberty for the men in unlocked cells. Berks County manages the trusty women in the jail through its "custody" department but manages the trusty men in the Community Reentry Center through its "treatment" department. We fully described Berks County's disparity in the liberty rights of trusty inmates based on their gender in our January 15, 2019 Memorandum. After we granted Theresa Victory preliminary injunctive relief, she plead guilty to prison offenses, ended up in disciplinary segregation status, and Berks County released her from custody as scheduled by the trial judge. We now address two more women trusty inmates seeking injunctive relief. Neither qualify for injunctive relief today: one is now released from custody as scheduled by the trial judge and the other woman never grieved her complaints and does not presently show grounds to excuse her need to exhaust administrative remedies. We cannot cavalierly ignore exhaustion requirements. In the accompanying Orders, we deny the present motion for injunctive relief and dissolve the injunction affecting Theresa Victory's rights as a trusty inmate.

## I. Background

Formerly incarcerated Theresa Victory began this action on November 30, 2018 seeking injunctive and declaratory relief and damages arising from alleged violations of her rights to equal protection as a female inmate classified with trusty status and for retaliation. She promptly moved for mandatory injunctive relief requiring the Defendants "immediately move [her from the F Block in the Jail] to the [Community Reentry Center] or an alternative with the exact same privileges, programs, and services."[1] After expedited discovery and an extensive January 10, 2019 preliminary injunction hearing, we granted Ms. Victory's motion for a preliminary injunction on January 15, 2019.[2] We required the Berks County Warden and her agents to provide Ms. Victory with "the same liberty and freedom of movement provided to male Trusty inmates housed at the Community Reentry Center as of January 10, 2019, including (by way of example only) thirteen hours of each day (not including work release) outside of her cell, no lock on her cell in the evening hours, and direct access to rehabilitative programs she wishes to attend in the Community Reentry Center."[3]

Before we entered the preliminary injunction, Ms. Victory plead guilty to two offenses in the Jail resulting in her losing her trusty custody status until January 29, 2019. As a result, we stayed "Berks County's obligations to provide Ms. Victory with equal treatment of male Trusty inmates until the January 29, 2019 lifting of her disciplinary segregation" and required Berks County, through Warden Quigley, to file a plan describing the constitutional protections defined in our January 15, 2019 Order" which it would provide Ms. Victory after her disciplinary segregation expired on January 29, 2019.[4] Possibly consistent with her sentence, Berks County released Ms. Victory from its custody at 12:01 A.M. on January 28, 2019. Berks County promptly moved to dissolve the January 15, 2019 injunction.[5] Compliant with our Order, the Berks County

Warden filed an affidavit describing how Berks County would provide Ms. Victory with equal protection in the F Block of the Jail should she return to trusty status before being released.[6]

While we addressed Ms. Victory's custodial status, she filed an amended complaint along with Amara Sanders and Samantha Huntington who Berks County also classified in "trusty" status. They also sought injunctive and declaratory relief and damages. Ms. Sanders and Ms. Huntington moved for a preliminary injunction requiring the Berks County Defendants move them to the Community Reentry Center or an alternative with the exact same privileges, programs, and services. We allowed expedited discovery and set the injunction hearing. Amara Sanders and Samantha Huntington testified, as well as three witnesses from the Jail, at our February 11, 2019 preliminary injunction hearing.

After evaluating the credibility of testimony, we find 21-year-old Ms. Sanders is presently classified in trusty custody status in the Berks County Jail but resides in the F Block of the Jail. The Jail classified her as trusty status beginning October 3, 2018. She initially resided in the Jail's overflow area with much more liberty than provided in a cell on the F Block. She now resides with a cellmate with a bunk bed, desk and toilet. Her cell door locks and she is limited in her rec time. She has been in approximately five or six different jail cells in her tenure. She shared a cell with Theresa Victory for approximately one month in either November or December 2018. She works in the Jail's laundry facilities from 2:15 P.M. to approximately 9:00 P.M. each day. She learned about the Community Reentry Center from Theresa Victory and heard a Berks County correctional officer describe the cells in the Community Reentry Center not locking during lockdowns. Ms. Sanders never requested any programming. She never asked anybody about programming. Working in a pizza shop before her jail sentence, she hopes to go to school upon release. She has never sought job training inside or outside of the Jail. While aware of a grievance

3

system, she never filed a grievance and has never talked to anyone about a fear of being retaliated against. The Defendants never disciplined her. While she never filed a grievance, she is aware a coworker in the laundry filed a grievance. She also saw the correctional officers treat Ms. Victory more harshly after she complained, including searching her cell more than other women inmates. She thought she could not grieve the differing treatment of women trusty inmates because Ms. Victory had already done so.

Ms. Huntington is a 21-year-old woman presently living with her parents in Bethel, Pennsylvania. Berks County released her from custody on February 2, 2019 after entering custody on April 25, 2018. The Jail classified her in trusty status since May 2018. The Jail originally housed her in the overflow unit for approximately two months before she was moved to a cell on the F Block. She preferred the overflow unit as it provides more freedom of movement, offers lockers to protect things and allows her to eat away from her toilet. She never learned or heard anything about the Community Reentry Center other than a correctional officer describe the open floorplan with no locks on the door.

## II. Analysis

### A. Ms. Victory's and Ms. Huntington's release renders their individual claims for preliminary injunctive relief moot.

The Berks County Defendants argue Ms. Victory and Ms. Huntington's claims for preliminary injunctive relief are now moot because of their recent discharge from the Berks County Jail. It is not disputed Berks County discharged Theresa Victory on January 28, 2019,[7] and Samantha Huntington on February 2, 2019.[8] Both are now on parole. Ms. Victory and Ms. Huntington's claims for preliminary injunctive relief are now moot because their release from the Berks County jail renders us unable to compel Defendants to grant their requested relief.

4

"[A] case is moot if 'developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief.'"[9] "A case that becomes moot at any point during the proceedings is 'no longer a "Case" or "Controversy" for purposes of Article III,' and is outside the jurisdiction of the federal courts."[10] "Generally, courts have held that an inmate's release from a correctional institution makes his or her claims for injunctive relief moot."[11]

As particularly relevant here, courts in our circuit hold an inmate's individual claims for injunctive relief moot upon an inmate's release for parole. In *Nelson v. State of New Jersey Department of Corrections*, for example, our Court of Appeals dismissed as moot a plaintiff's appeal from the district court's denial of his motion for injunctive relief.[12] To redress injuries sustained in prison,[13] the plaintiff "requested the injunctive relief of removal from the custody of the New Jersey Department of Correction, protection from the defendants, and a blood test and medical care from a federal medical provider."[14] But after the district court denied the plaintiff's motion for a preliminary injunction, the plaintiff "was released on parole" and was therefore "no longer in the custody of the New Jersey Department of Corrections or the individual defendants."[15] Our Court of Appeals dismissed the appeal as moot, finding "none of the relief [plaintiff] has requested can be provided by the defendants."[16]

Judge Caldwell's decision in *Herder v. Biesh* is also instructive.[17] The plaintiff in *Herder*, after suffering an injury in prison, alleged the "defendants were deliberately indifferent to his serious medical needs" and sought "an injunction in the form of medical care from an unbiased medical practitioner so that his serious medical needs would be diagnosed."[18] Judge Caldwell found the claim moot because "[t]he only relief [the plaintiff] seeks in this case is a consultation with and evaluation by an unbiased physician," and "[h]is release on parole from [Department of

5

Corrections] custody moots this request as the DOC no longer has custody or control over him."[19] Judge Caldwell also found "[w]hile it is possible that [the plaintiff] could at some point in the future return to DOC custody, the mere possibility of that occurring is too speculative to overcome the mootness of his claim."[20]

Judge Kugler made a similar finding of mootness in *Ortiz v. New Jersey*.[21] In *Ortiz*, the plaintiff sued various defendants for claims stemming from his fall from his jail cell's top bunk and from a separate incident allegedly involving the administration of an insulin shot.[22] The plaintiff sought "monetary damages as well as prospective and injunctive relief on his claims"[23] but during the pendency of the litigation was released from prison and began parole. Judge Kugler found the plaintiff's "release from prison on parole moots his claim for injunctive relief against the State Defendants."[24] Other authorities are also in accord.[25]

Ms. Victory and Ms. Huntington argue despite their release from the Berks County Jail, their claims are not moot because they are "challenging conduct that is 'capable of repetition yet evading review.'"[26] "A dispute qualifies for that exception only 'if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'"[27] Even if Ms. Victory and Ms. Huntington could demonstrate the challenged action is too short in duration to be fully litigated, they cannot show "a reasonable expectation" they will again return to the Berks County Jail and be subjected to the same treatment.[28]

Judge Joyner's finding of mootness in *Hontz v. Berks County Prison*[29] is also persuasive. In *Hontz*, the plaintiff sued the Berks County Prison, the Warden, and various County commissioners, among other defendants, alleging claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Fourteenth Amendment's Equal Protection Clause

6

stemming from Berks County Prison's refusal to permit him to work in the kitchen because of his Hepatitis C.[30] Among other remedies, the plaintiff sought "declaratory judgment and injunctive relief for the alleged denial of food service work due to Hepatitis C."[31] But "[t]he [p]laintiff was transferred to state prison"[32] and the Berks County defendants argued the inmate's transfer to a state facility rendered the claims for declaratory and injunctive relief moot.[33] The plaintiff argued in response the claims "are capable of repetition yet evading review" because "he is likely to be returned to Berks County Prison if he violates the terms of his parole in the future, and therefore the alleged constitutional violations could reoccur."[34]

Judge Joyner "decline[d] to accept the [p]laintiff's argument that his case is capable of repetition yet evading review because of the likelihood that he will violate parole and be returned to Berks County Prison."[35] Judge Joyner dismissed as moot the plaintiff's claims for declaratory and injunctive relief, finding the plaintiff's reliance on the potential prospect of a parole violation to be "conjecture."[36]

Ms. Victory and Ms. Huntington dispute characterizing a potential parole violation as conjectural. They rely on our Court of Appeals' decisions in *Parkell v. Danberg*[37] and *Micklus v. Carlson*[38] to distinguish their status as parolees from those inmates "completely released from the system through expiration of a sentence or acquittal upon retrial."[39] In *Micklus v. Carlson*, the district court "concluded that mootness prevented the complaint from stating a claim for injunctive relief because [the plaintiff] had been paroled from his [Youth Corrections Act (YCA), 18 U.S.C. §§ 5005–5026] sentence after the complaint had been filed."[40] Our Court of Appeals found error in this determination because the statute set a "low standard for reincarceration."[41] "[A] committed youth offender who has been conditionally discharged from YCA custody," our Court of Appeals

7

found, "may be recommitted if the U.S. Parole Commission (Commission) determines that he would benefit from recommittal."[42]

And more recently in *Parkell v. Danberg*, our Court of Appeals reversed in part the district court's grant of summary judgment to the state defendants after the district court found the plaintiff's transfer out of a prison building in which he was subjected to repeated visual body-cavity searches mooted his claim for injunctive relief.[43] Our Court of Appeals held although such a transfer would generally moot a claim for injunctive relief, the capable of repetition yet evading review "exception to the mootness doctrine could potentially apply."[44] Our Court of Appeals acknowledged the "difficult and fact-intensive" mootness inquiry necessary "when the plaintiff is still connected to the system."[45] Although our Court of Appeals found the plaintiff's point "well-taken that, as a general matter, confinement of inmates in isolation units is hardly unusual, which we have acknowledged in other contexts," it cautioned the plaintiff "must present more than generalities; he must establish a reasonable expectation that he, specifically, will again be subjected to the unconstitutional search practices carried out in [the] isolation units."[46] Our Court of Appeals did not definitively resolve the issue, however, as it remanded for the district court to conduct the requisite mootness analysis in the first instance.[47] We are unable to study the district court's analysis on remand, however, as the case settled after remand.[48]

Ms. Victory and Ms. Huntington argue they are substantially likely to return to the Berks County Jail because they could commit another crime and be reincarcerated or—even more likely—commit a technical violation of their parole resulting in reincarceration. Ms. Victory and Ms. Huntington argue the high percentage of Pennsylvania prison admissions stemming from parole violations permits us to reasonably conclude such a result is likely here. Such evidence, however, does not appear to depart the realm of the "generalities" our Court of Appeals described

8

in *Parkell*.⁴⁹ And we are also not persuaded the hypothetical prospect of reoffending or committing a parole violation—an act entirely within an individual's control—can defeat mootness in these circumstances. We are particularly cautious of such an assertion following the Supreme Court's 2018 decision in *United States v. Sanchez-Gomez*,⁵⁰ in which the Court rejected the respondents' invocation of the capable of repetition yet evading review exception to mootness, despite their argument they could again break the law and be subjected to the unlawful pretrial restraints. The Supreme Court emphasized it has "consistently refused to 'conclude that the case-or-controversy requirement is satisfied by' the possibility that a party 'will be prosecuted for violating valid criminal laws.'"⁵¹ The Court also found unpersuasive the inmates' reliance on civil cases applying the exception, because those "cases rested on the litigants' inability, *for reasons beyond their control*, to prevent themselves from transgressing and avoid recurrence of the challenged conduct."⁵²

Ms. Victory and Ms. Huntington present no such circumstances beyond their control. They possess the free will to comply with law as well as the terms of their parole. Ms. Victory's and Ms. Huntington's claims for injunctive relief are moot. Ms. Huntington moved for a preliminary injunction requiring Berks County immediately move her to Community Reentry Center or an alternative with the exact same privileges, programs and services.⁵³ As her counsel conceded at the hearing, she no longer seeks this relief; she now lives at home with her parents. Ms. Victory is also released. She no longer seeks the same treatment as male inmates classified in the trusty custody status. We have no basis other than her counsel's cynical speculation she may someday return to trusty status in the Berks County Jail. We trust not. And we have no reason to believe these young women will be back.

9

We deny Ms. Huntington's request for a mandatory injunction as she is no longer seeking equal protection as a female inmate. We also dissolve our January 15, 2019 injunction as it related solely to Ms. Victory's rights to equal protection while classified in trusty custody status. As of our January 25, 2019 Order–and today–she is no longer in this status. Considering Ms. Victory's change in status renders her claim for preliminary injunctive relief moot, dissolution is the appropriate remedy.[54]

### B. We deny Ms. Sanders preliminary injunctive relief for failing to exhaust.

Ms. Sanders' claims are governed by the Prison Litigation Reform Act (Act). The Act requires an inmate exhaust available administrative remedies before bringing an action relating to prison conditions.[55] Exhaustion is a gateway issue. If Ms. Sanders does not carry her burden of showing exhaustion, she cannot demonstrate a likelihood of success on the merits of her claim[56] and we may not issue a preliminary injunction.[57] Ms. Sanders candidly testified she never filed a single grievance during her time as an inmate; while she never testified to a desire to grieve, her counsel argues her failure to exhaust administrative remedies must be excused because the grievance processes detailed in the *Inmate Handbook* were unavailable to her. Ms. Sanders is correct the Act's exhaustion rule "contains one significant qualifier: the remedies must indeed be available to the prisoner."[58] At this preliminary injunction stage, however, she does not carry her burden of demonstrating the remedies detailed in the *Inmate Handbook* were unavailable to her, even if discovery could ultimately yield contrary evidence.

In its 2016 decision *Ross v. Blake,* the Supreme Court articulated "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."[59] First, an administrative remedy is not available when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved

inmates."[60] Second, an administrative remedy is unavailable when the scheme is "so opaque that it becomes, practically speaking, incapable of use."[61] And third, an administrative remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."[62] Ms. Sanders fails to demonstrate any of these circumstances apply.

Ms. Sanders argues two provisions of Berks County's *Inmate Handbook* deem her claim non-grievable.[63] Ms. Sanders first relies on the provision of the *Inmate Handbook* prohibiting the filing of grievances "about any matter that is in the process of litigation."[64] A matter is "in the process of litigation," according to the *Inmate Handbook*, "when someone communicates an intent/threat to a member of our staff or upon receipt of a 'notice' from the court."[65] Ms. Sanders argues she joined this case through an amended complaint filed on January 17, 2019, after Ms. Victory's complaint had already been served on the Defendants.[66] The policy, she contends, plainly instructs her not to grieve the issue because of Ms. Victory's pending litigation. The Supreme Court in *Ross* instructed when "[w]hen an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion."[67] While Ms. Sanders reads the policy as prohibiting *any* inmate from filing a grievance so long as another inmate in the jail has already done so, this is not the only plausible interpretation of the provision. An inmate could also plausibly read the policy as preventing the filing of grievances by only the inmate litigating, or threatening to litigate, an issue.

The same logic applies to Ms. Sanders' reliance on the provision of the *Inmate Handbook* warning discipline may result for "[a]buse of the grievance process," which includes, among other conduct, submitting grievances "that have previously been addressed and answered by staff" or "[s]ubmitting repetitive grievances on the same issue(s)."[68] Ms. Sanders again reads this policy

11

language as precluding *any* inmate from filing a grievance about any issue another inmate has already grieved. But, as above, another equally plausible interpretation is apparent: a reasonable inmate could read this provision as prohibiting only the filing of duplicative grievances by the same inmate.

Captain Castro credibly testified Ms. Sanders' reading of the policy language is incorrect. Captain Castro testified he individually responds to grievances filed by a group of inmates about a prison condition such as a lack of heat. Such a reading of the policy also makes practical sense, as the prison could not reasonably punish an inmate for grieving an issue he or she is not aware another inmate already grieved. And it would be quite impractical to require confined inmates to collectively coordinate who among the many will file a grievance about issues affecting, for example, an entire cell block. We are not finding whether his interpretation is correct. But on this preliminary record, we cannot agree with Ms. Sanders' interpretation as being the rule.

Even if Ms. Sanders' reading of the *Inmate Handbook* is reasonable, we confront a policy subject to two reasonable interpretations. Ms. Sanders did not err on the side of exhaustion here. She did not once ask a prison guard or other official about whether, and if so, how, she could file a grievance.

Ms. Sanders appeared to invoke another exception to exhaustion during her testimony on February 11. Ms. Sanders testified she perceived correctional officers disciplining Ms. Victory harsher than other inmates for minor infractions. But we do not find Ms. Sanders presents any evidence demonstrating she received threats rendering administrative remedies unavailable. Our Court of Appeals recently held to "[t]o defeat a failure-to-exhaust defense" based on threats or intimidation, "an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the

12

threat actually did deter this particular inmate."⁶⁹  Ms. Sanders testified she perceived Berks County prison officials discipline Ms. Victory more severely than other inmates for minor infractions, such as taking food from the cafeteria.  Ms. Sanders testified she witnessed Ms. Victory's cell being searched, but she did not testify she heard a correctional officer make a threat during the searches of Ms. Victory's cell.  While Ms. Victory may yet present credible testimony based on individual knowledge as to retaliation, Ms. Sanders has not presented evidence to show jail personnel threatened or intimidated Ms. Sanders.  She failed to make the requisite showing of conduct sufficient to "deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance" and conduct which "actually did deter" her from lodging a grievance.⁷⁰

Ms. Sanders has not established an exception to her exhaustion requirement on this preliminary record.  She has not exhausted her rights to grieve her treatment as a female trusty inmate for purposes of injunctive relief today.  We must deny her request for injunctive relief.

### III. Conclusion

In the accompanying orders, we deny Plaintiffs Samantha Huntington and Amara Sanders' Motion for a preliminary injunction and grant the Berks County Defendants motion to dissolve the January 15, 2019 mandatory injunction affecting the treatment of Theresa Victory, as modified on January 25, 2019.

---

¹ ECF Doc. No. 9-1.

² ECF Doc. No. 39.

³ *Id.*

⁴ ECF Doc. No. 61.

⁵ ECF Doc. No. 63.

13

⁶ ECF Doc. No. 64.

⁷ ECF Doc. No. 63 at 12–17.

⁸ Defs.' Ex. No. 28.

⁹ *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698–99 (3d Cir. 1996)).

¹⁰ *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)); *see Blanciak*, 77 F.3d at 698 ("Article III's 'case or controversy' requirement prevents federal courts from deciding cases that are moot.").

¹¹ *Sutton v. City of Philadelphia*, 21 F. Supp. 3d 474, 480 (E.D. Pa. 2014) (collecting cases).

¹² *Nelson v. State of N.J. Dep't of Corr.*, 214 F. App'x 243, 244 (3d Cir. 2007) (per curiam).

¹³ Specifically, the plaintiff "alleged that the trial court in his criminal case changed the jury's verdict after the jury left the courtroom and that his challenges to his conviction led to threats from prison officials and attempts being made on his life. He stated that he was beaten by correctional officers, drugged several times, and in May 2004, was poisoned by a nurse. He claimed that he subsequently experienced shortness of breath, headaches, and loss of consciousness and was denied medical treatment." *Id.* at 243–44 (footnote omitted).

¹⁴ *Id.* at 244.

¹⁵ *Id.*

¹⁶ *Id.*

¹⁷ *Herder v. Biesh*, No. 09-2470, 2011 WL 861818, at *2–3 (M.D. Pa. Mar. 9, 2011).

¹⁸ *Id.* at *1 (citation and internal quotation marks omitted).

¹⁹ *Id.* at *2.

²⁰ *Id.*

²¹ *Ortiz v. New Jersey*, No. 13-5372, 2015 WL 3755063, at *5 (D.N.J. June 16, 2015).

²² *Id.* at *1.

²³ *Id.*

²⁴ *Id.* at *5.

²⁵ *See, e.g., Maskelunas v. Wexford Health Source, Inc.*, No. 14-369, 2015 WL 6686709, at *1 (W.D. Pa. Oct. 8, 2015) ("Any claim for injunctive relief is moot since Maskelunas has been on parole since September 2014, and I address only Maskelunas' claim for damages."), *report and recommendation adopted*, No. 14-369, 2015 WL 6686719 (W.D. Pa. Oct. 29, 2015); *McKinney v. Pennsylvania Bd. of Prob. & Parole*, No. 09-3679, 2010 WL 2720631, at *1 (E.D. Pa. July 7, 2010) (internal citation omitted) ("McKinney has since been released from DOC custody and is not under PBPP supervision. Thus, his injunctive relief claims are moot."), *aff'd*, 405 F. App'x 646 (3d Cir. 2010).

²⁶ ECF Doc. No. 67 at 3 (quoting *Parkell v. Danberg*, 833 F.3d 313, 333 (3d Cir. 2016); ECF Doc. No. 74 at 6 (same).

²⁷ *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018) (quoting *Turner v. Rogers*, 564 U.S. 431, 439–440 (2011)).

²⁸ *Id.* (citation and internal quotation marks omitted).

²⁹ No. 12-2663, 2012 WL 5199370, at *3 (E.D. Pa. Oct. 19, 2012).

³⁰ *Id.* at *1.

³¹ *Id.* at *2.

³² *Id.* at *1.

³³ *Id.* at *2.

³⁴ *Id.*

³⁵ *Id.* at *3.

³⁶ *Id.* (quoting *Abdul-Akbar v. Watson*, 4 F.3d 195, 207 (3d Cir. 1993)).

³⁷ 833 F.3d 313 (3d Cir. 2016).

³⁸ 632 F.2d 227 (3d Cir. 1980).

³⁹ ECF Doc. No. 67 at 4 (quoting *Parkell*, 833 F.3d at 333); ECF Doc. No. 74 at 7 (same).

⁴⁰ *Micklus*, 632 F.2d at 232.

⁴¹ *Id.* at 233. The Court of Appeals also found relevant the plaintiff's lengthy history of "confinement in noncomplying facilities." *Id.*

⁴² *Id.* at 232.

[43] *Parkell*, 833 F.3d at 323.

[44] *Id.* at 332.

[45] *Id.* at 333.

[46] *Id.*

[47] *Id.* at 334 ("We will therefore leave it for the District Court to determine on remand whether Parkell's request for injunctive relief in relation to the visual body-cavity searches remains a live issue under the capable-of-repetition exception to mootness.").

[48] *See Parkell v. Danberg*, No. 10-0412, ECF Doc. No. 289 (D. Del. Feb. 20, 2018).

[49] *Parkell*, 833 F.3d at 333.

[50] 138 S. Ct. 1532 (2018).

[51] *Id.* at 1541 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)).

[52] *Id.* at 1542 (emphasis added).

[53] ECF Doc. No. 53.

[54] *See, e.g., U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1093 (9th Cir. 2010) ("A preliminary injunction imposed according to the procedures outlined in Federal Rule of Civil Procedure 65 dissolves *ipso facto* when a final judgment is entered in the cause."); *Madison Square Garden Boxing, Inc. v. Shavers*, 562 F.2d 141, 144 (2d Cir. 1977) ("With the entry of the final judgment, the life of the preliminary injunction came to an end, and it no longer had a binding effect on any one. The preliminary injunction was by its very nature interlocutory, tentative and impermanent."); *Equal Emp't Opportunity Comm'n v. Evans Fruit Co.*, No. 10-3033, 2013 WL 12093748, at *1–2 (E.D. Wash. July 22, 2013) (mooting a motion to amend a final judgment for the judgment to include the dissolution of a preliminary injunction because the "final judgment calls for dissolution of the preliminary injunction order"); *Ziemba v. Am. Home Mortg. Servicing, Inc.*, No. 10-02781, 2011 WL 3420646, at *6 (N.D. Ga. Aug. 4, 2011) (dissolving a preliminary injunction as a result of summary judgment); *Great Lakes Consortium v. Michigan*, 480 F. Supp. 2d 977, 986 n.4 (W.D. Mich. 2007) ("In light of the Court's disposition of the motion to dismiss and the motion to amend, the issue of continuing the preliminary injunction is now moot. The preliminary injunction therefore will be dissolved.").

[55] 42 U.S.C. § 1997e(a).

[56] *See Savage v. Wexford Health Sources, Inc.*, No. 16-2923, 2017 WL 5593353, at *3 (E.D. Pa. Nov. 21, 2017) ("Exhaustion of administrative remedies is mandatory and applies to all prisoners seeking redress for any prison condition or occurrence.").

[57] *Dalmatia Imp. Grp., Inc. v. Foodmatch, Inc.*, No. 16-2767, 2016 WL 6525407, at *4 (E.D. Pa. Nov. 3, 2016); *see Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017) (holding courts can only proceed to balance all four preliminary injunction factors if the movant "meet[s] the threshold for the first two 'most critical' factors," the first of which requires the movant "demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not)") (footnote omitted).

[58] *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (internal quotation marks omitted).

[59] *Id.* at 1859.

[60] *Id.*

[61] *Id.*

[62] *Id.* at 1860.

[63] *See* ECF Doc. No. 71 at 4–6.

[64] Defs' Ex. No. 3 at 51, N.T. Feb. 11, 2019.

[65] *Id.* (original underlining and some internal quotation marks omitted).

[66] ECF Doc. No. 74 at 5.

[67] *Ross*, 136 S. Ct. at 1859.

[68] Defs.' Ex. No. 3 at 53, N.T. Feb. 11, 2019.

[69] *Rinaldi v. United States*, 904 F.3d 257, 269 (3d Cir. 2018).

[70] *Id.*