**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THERESA VICTORY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 18-5170** |
| | : | |
| **BERKS COUNTY,** ***et al.*** | : | |

**MEMORANDUM WITH FINDINGS OF FACT**

**KEARNEY, J.** **July 11, 2019**

Berks County continues to house female inmates with its carefully evaluated lowest-risk custody classification of "Trusty" in locked cells in its Jail without the freedom of movement, time outside their cell during which they can use the bathroom, showers, and a microwave, unlocked cells during evening hours, and visitations without glass partitions it offers to male Trusty inmates in a neighboring "Community Reentry Center." It repeatedly objects to providing equal housing and services to the female Trusty inmates. It repeatedly delays changing its almost-ten-year-old policy towards the female Trusty inmates. We twice ordered Berks County provide a plan to vindicate the female Trusty inmates' rights to equal protection. Rather than propose a plan when required on June 4, 2019, Berks County made a passing reference to transferring the female Trusty inmates to an overflow unit which we earlier rejected. Its Warden swore Berks County provided equal housing and services notwithstanding extensive federal court Orders. Berks County finally complied on July 1, 2019, but not until female Trusty inmate Alice Velazquez-Diaz waited several weeks for the court-ordered injunctive relief and her counsel expended time to enforce our Order. After evaluating the credibility of witnesses and all of Berks County's flawed reasons, we today find Berks County and its Warden in civil contempt of our May 20, 2019 Order and require them to pay $500 to Ms. Velazquez-Diaz and her lawyer's reasonable fees of $6,571.20.

## I. Findings of Fact.

1. On November 30, 2018, Theresa Victory, a female inmate in the Berks County Jail classified with the lowest custody risk of "Trusty", sued Berks County, Warden Janine L. Quigley, Deputy Warden Stephanie Smith, and Berks County Commissioners Kevin S. Barnhardt, Christian Y. Leinbach, and Mark C. Scott ("Berks County Defendants") under the Equal Protection Clause of the Fourteenth Amendment and the Pennsylvania Constitution alleging differential treatment of every male Trusty inmate housed in Berks County's Community Reentry Center and female Trusty inmates housed in the F Unit of the Berks County Jail.[1]

2. On December 11, 2018, Ms. Victory moved for preliminary injunctive relief seeking to enjoin Berks County Defendants' differential treatment of male and female Trusty inmates.[2] We evaluated the credibility of several witnesses leading to our January 15, 2019 Order granting Ms. Victory's motion for preliminary injunctive relief.[3]

3. On January 15, 2019, we ordered Berks County Defendants implement a schedule providing Ms. Victory:

> the same liberty and freedom of movement provided to male Trusty inmates housed at the Community Reentry Center as of January 10, 2019, including (by way of example only) thirteen hours of each day (not including work release) outside of her cell, no lock on her cell in the evening hours, and direct access to rehabilitative programs she wishes to attend in the Community Reentry Center.[4]

4. On January 28, 2019, Warden Quigley swore approval of a plan for compliance with our January 15, 2019 Order enjoining differential treatment.[5] Warden Quigley swore Ms. Victory "shall be housed in a single cell on F Unit and the cell door lock shall remain in the unlocked position at all times [Ms.] Victory is in a trusty status[.]"[6] Warden Quigley further swore "from 0430 HRS through 2300 HRS, [Ms.] Victory shall have access to dayroom privileges and services that are available during open dayroom periods such as television, microwave, telephone,

shower, etc."[7] She further swore "[i]f [Ms.] Victory expresses an interest in attending a rehabilitative program that is offered at the Community Reentry Center, she should be directed to the F Unit counselor who shall arrange for delivery of the program to [Ms.] Victory."[8]

5. On January 28, 2019, Berks County released Ms. Victory at the end of her jail sentence.[9] On February 15, 2019, we dissolved the preliminary injunction finding Ms. Victory's release mooted the injunction.[10]

6. On April 5, 2019, we denied Berks County Defendants' Motion to dismiss Ms. Victory's Amended Complaint explaining she stated a claim for sex discrimination alleging Berks County Defendants provided differential treatment to male Trusty inmates in the Community Reentry Center and female Trusty inmates in the Jail.[11]

7. On April 22, 2019, Alice Velazquez-Diaz, a female Trusty inmate in the Berks County Jail, joined Ms. Victory's Second Amended Complaint complaining of differential treatment of female and male Trusty inmates in the Berks County Jail System.[12]

8. On April 24, 2019, Ms. Velazquez-Diaz moved for preliminary injunctive relief to enjoin Berks County Defendants' differing treatment of her.[13]

9. On May 20, 2019, following an extensive evidentiary hearing where we again evaluated the credibility of several witnesses and learned of the possible use of an "overflow" unit on the F Block to provide some measure of freedom of movement for female Trusty inmates which may mitigate the ongoing deprivation of equal protection, we granted Ms. Velazquez-Diaz's motion for preliminary injunctive relief.[14] We found Ms. Velazquez-Diaz showed a likelihood of success on the merits of her Equal Protection claim complaining of differential treatment concerning freedom of movement and visitation conditions for male Trusty inmates in the Community Reentry Center and female Trusty inmates in the Jail.[15]

10. We also found even assuming Berks County housed Ms. Velazquez-Diaz in the overflow unit on F Block, Berks County "still offers significantly less freedom of movement [in the overflow unit] than it offers male Trusty inmates in the [Reentry Center]."[16]

11. On May 20, 2019, we ordered Berks County, through Warden Janine Quigley, by May 28, 2019:

> shall file a proposed plan to ensure compliance with the accompanying Memorandum allowing Ms. Velazquez-Diaz to have the freedom of movement provided to male Trusty inmates housed at the Community Reentry Center as of May 15, 2019, including (by way of example only) thirteen hours of each day (not including work release) outside of her cell during which time she can use the bathroom, showers, and a microwave; no lock on her cell in the evening hours absent specific security or safety concerns relating to Ms. Velazquez-Diaz limited only to the times of the concerns; and, visitation without glass partition as afforded to male trusty inmates[.][17]

We allowed Ms. Velazquez-Diaz to promptly comment upon or object to Berks County's plan. In a May 28, 2019 Order, we granted an extension allowing Warden Quigley and Berks County to file a plan by June 4, 2019.[18]

12. On May 23, 2019, Berks County appealed our May 20, 2019 Order and sought a stay of our May 20, 2019 Order pending appeal.[19] On June 3, 2019, we denied the stay and again explained, in extensive detail, why Berks County's longstanding different housing and services provided to Ms. Velazquez-Diaz violated the Equal Protection Clause.[20]

13. The next day, on June 4, 2019, Warden Quigley submitted an affidavit in response to our May 20, 2019 Order.[21] Notwithstanding three extensive opinions describing, as a matter of law, why the present housing of female Trusty inmates violates the Equal Protection Clause, Warden Quigley signed an affidavit assisted by Berks County's counsel swearing she believes Berks County provides "equal housing and services to all inmates that are committed to the [Berks County Jail System.]"[22] Even though we specifically rejected the possibility of overflow unit

housing as satisfying the Equal Protection Clause, she swore Berks County was "prepared to move [Ms.] Velazquez-Diaz to the F-Unit Overflow Unit should it be so ordered by the Court with access to bathrooms, showers, and a microwave oven[.]"[23] She provided no details. She and her lawyers knew of our May 20, 2019 Memorandum rejecting this very idea. Undeterred, she also swore moving Ms. Velazquez-Diaz to the overflow unit on the F Block in the Berks County Jail allowing for similar freedom of movement creates challenges for "maintain[ing] safety and security and impedes the ability of administration to safely and efficiently operate" the Berks County Jail System.[24] Warden Quigley swore to "safety and security concerns associated with transporting an inmate outside of the jail to attend visitations in another building" but proposed no method to ensure similar visitation conditions for male and female Trusty inmates.[25] Her statements about safety in moving to the overflow unit define "straw man" arguments. Warden Quigley, along with her counsel, mentioned a possible transfer to the overflow unit knowing we already rejected this idea and then determined this already-rejected idea would not be safe or secure. Berks County failed to address our concerns with visitation.

14. On June 4, 2019, Berks County sought an emergency stay of the May 20, 2019 Order in our Court of Appeals.[26]

15. On June 6, 2019, Ms. Velazquez-Diaz timely responded to Warden Quigley's June 4, 2019 affidavit arguing Defendants failed to provide a plan and even if we considered the renewed idea of moving the female Trusty inmates into the overflow unit, this transfer would not meet the terms of our May 20, 2019 Order.[27] Ms. Velazquez-Diaz argued, among other things, Berks County failed to address our concerns with visitation rights for female Trusty inmates.

16. On June 12, 2019, Ms. Velazquez-Diaz moved to enforce our May 20, 2019 Order and to hold Berks County in civil contempt for failing to comply with our May 20, 2019 Order for

failure to provide a proposed plan.[28] Ms. Velazquez-Diaz argues we should hold Berks County and Warden Quigley in civil contempt claiming they "disobeyed the Court's [May 20, 2019] Order because they did not submit a proposed plan."[29]

17. On June 14, 2019, Berks County Defendants responded to Ms. Velazquez-Diaz's Motion for contempt and to enforce our May 20, 2019 Order.[30] In an affidavit attached to the response, Warden Quigley swore to safety and security concerns concerning visitation conditions at the Jail and the Community Reentry Center but again failed to propose a method for providing similar visitation conditions for male and female Trusty inmates.[31]

18. On June 20, 2019, our Court of Appeals denied Berks County's emergency motion for a stay. We scheduled a hearing on the pending motion for contempt for July 9, 2019.[32]

19. On July 1, 2019, Warden Quigley submitted an affidavit swearing to the viability of a plan for similar treatment under our May 20, 2019 Order.[33] Warden Quigley swore she did not "willfully or intentionally" fail to comply with our May 20, 2019 Order.[34] She believed we only required her submit a plan for compliance if she could do so with "assurances of safety and security."[35]

20. Warden Quigley proposes using the area now designated for administrative quarantine status inmates to house up to sixteen female Trusty inmates.[36] Berks County will assign female Trusty inmates "a cell and bed and the cell door will remain open at all times as long as no other condition is required based on other circumstances that would warrant intermittent/temporary locking of a cell such as a unit action, an informal adjustment, emergency situation, etc."[37] Female Trusty inmates from 4:00 AM to 11:00 PM will have access to a dayroom "including use of the television, microwave, telephone, and shower, etc."[38] Berks County will install tables in the

dayroom where female Trusty inmates can eat meals. Berks County will also modify female Trusty inmates' toilets to prevent locking.

21. In her July 1, 2019 plan, Warden Quigley also swore as to the viability of a visitation schedule with the same visitation rules applied for male Trusty inmates.[39] Warden Quigley proposed offering female Trusty inmates non-contact, barrier-free visitations in a separate visitation area in the Jail. Warden Quigley provided a schedule for visitations. She swore Berks County will purchase a body scanner to screen inmates before returning to the Jail from the visitation site.

22. On July 8, 2019, we denied Berks County Defendants' motion for summary judgment finding Mses. Victory and Velazquez-Diaz raised a genuine issue of fact as to whether Berks County Defendants' differential treatment of male and female Trusty inmates violates the Equal Protection Clause of the Fourteenth Amendment.[40]

23. On July 9, 2019, we held a hearing to determine whether Berks County Defendants failed to comply with our May 20, 2019 Order. We heard testimony from Captain Miguel Castro of the Berks County Jail System. He swore before submitting the June 4, 2019 Affidavit, he and other Berks County Jail System officials, along with Warden Quigley and Berks County's counsel, discussed how to comply with our May 20, 2019 Order while still maintaining safety and security in the Jail System. Captain Castro talked to officers and lieutenants in the Jail System to determine a course of action. He admitted Berks County officials believed they already provided similar conditions for female and male Trusty inmates before June 4, 2019, despite our May 20, 2019 Order and Findings detailing unequal treatment.

24. He further admitted Berks County officials did not consider providing similar visitation conditions to female Trusty inmates in meetings leading up to Warden Quigley's June 4, 2019 Affidavit.

25. Captain Castro also swore although Warden Quigley swore she would be "prepared to move [Ms.] Velazquez-Diaz to the F-Unit Overflow Unit should it be so ordered," he admitted Berks County would need to make further adjustments to the overflow unit to comply with our May 20, 2019 Order, including adjustments to ensure the same freedom of movement offered to male Trusty inmates in the Community Reentry Center.

26. Berks County declined to proffer Warden Quigley to explain her varying sworn statements because her testimony would be cumulative of Captain Castro.

## II. Analysis.

Ms. Velazquez-Diaz moves (1) to enforce our May 20, 2019 Order requiring Berks County Defendants to propose a plan for providing Ms. Velazquez-Diaz treatment substantially similar to treatment provided to male Trusty inmates in the Community Reentry Center and (2) for a contempt finding against Berks County Defendants for failure to comply with our May 20, 2019 Order. Berks County and Warden Quigley are in contempt of our May 20, 2019 Order. Since Warden Quigley provided a plan on July 1, 2019 following a period of noncompliance, we deny Ms. Velazquez-Diaz's motion to enforce our May 20, 2019 Order as moot.

### A. Ms. Velazquez-Diaz proves Berks County Defendants' contempt for our May 20, 2019 Order.

Ms. Velazquez-Diaz argues we should find Berks County Defendants in civil contempt of our May 20, 2019 Order requiring they provide us a proposed plan for ensuring similar treatment for Ms. Velazquez-Diaz.

We may find a party in contempt for failure to obey a court order. "The purpose of civil contempt is primarily remedial and to benefit the complainant."[41] For a contempt finding, Ms. Velazquez-Diaz must prove "(1) a valid court order existed, (2) [Berks County Defendants] had knowledge of the order, and (3) [Berks County Defendant] disobeyed the order."[42] Ms. Velazquez-Diaz must prove these elements by clear and convincing evidence with ambiguities resolved in favor of Berks County Defendants.[43]

We may find a party in civil contempt for failure to obey a preliminary injunction order. In *John T.*, an intellectually disabled student sued Delaware County under the Individuals with Disabilities Education Act alleging Delaware County failed to provide special education services for the student.[44] The student moved for preliminary injunctive relief and after a hearing, the district court ordered Delaware County provide the student with special education services.[45] After Delaware County failed to provide the services, the district court held a hearing and later found Delaware County in contempt of the preliminary injunction hearing.[46] The district court ordered Delaware County pay the student $1,100 to compensate the him for expense of the services.

Our Court of Appeals affirmed the district court's contempt finding. The court of appeals explained the district court could impose compensatory sanctions for failure to obey a preliminary injunction order. The court explained "[i]f civil contempt sanctions are not designed to punish, they may be retroactive."[47] The court held the district court's imposition of compensatory sanctions to cover the cost of providing the student a teaching aide constituted proper civil contempt sanctions because while retroactive, the costs were compensatory rather than punitive.[48]

Ms. Velazquez-Diaz argues our May 20, 2019 Order is a valid order and Berks County Defendants knew of this order. Ms. Velazquez-Diaz further argues Berks County Defendants failed to provide a plan by June 4, 2019 as required in our May 20, 2019 and May 28, 2019 Orders.

In her June 4, 2019 Affidavit, Warden Quigley acknowledged our May 20, 2019 Order granting preliminary injunctive relief and directing Berks County file a proposed plan.[49] Warden Quigley swore she would "move inmate Velazquez-Diaz to the F-Unit Overflow Unit should it be so ordered by the Court with access to bathrooms, showers, and a microwave oven[.]"[50] She offered no details. She offered no plan. Instead, she concluded she "cannot, without compromising the safety and security of the institution, make any other recommendations for the housing arrangements of [Ms.] Velazquez-Diaz."[51] She made no recommendation for providing similar visitation conditions for Ms. Velazquez-Diaz.

Berks County Defendants failed to propose a plan by June 4, 2019 to provide Ms. Velazquez-Diaz with substantially similar conditions offered to male Trusty inmates as detailed in our May 20, 2019 Order and Findings. Warden Quigley submitted an affidavit on June 4, 2019 swearing she "believe[s] that [Berks County Defendants] are providing equal housing and services to all inmates that are committed to the [Berks County Jail System] within the operational parameters and using our best judgment to manage and operate the [Berks County Jail System]."[52] Warden Quigley only agreed in her June 4, 2019 Affidavit to move Ms. Velazquez-Diaz to the overflow unit on F Block if ordered. But we found on May 20, 2019 Berks County does not provide freedom of movement to inmates in the overflow unit on F Block similar to the freedom provided to male Trusty inmates in the Community Reentry Center.[53] Captain Castro admitted during our contempt hearing Berks County would need to make further adjustments to provide similar freedom of movement for inmates in the overflow unit on F Block. Warden Quigley in her June 4, 2019 Affidavit failed to propose a plan for providing visitation conditions similar to the conditions provided to male Trusty inmates as required in our May 20, 2019 Order.

We find Berks County Defendants in contempt of our May 20, 2019 Order. We reject each of their arguments to avoid civil contempt.

**1. Berks County Defendants' argument they could not comply with our May 20, 2019 Order fails.**

Berks County Defendants argue Warden Quigley did not refuse to submit a plan but rather could not "recommend a way in which she [could] provide the visitation or cell retreat without compromising safety and security at [the Berks County Jail System]."[54]

But we did not order Berks County Defendants provide a proposed plan to ensure compliance with our May 20, 2019 Findings of Fact and Conclusions of Law only if Berks County could provide a plan without compromising safety and security at the Berks County Jail System. We ordered Berks County provide a plan for providing similar treatment. Berks County Defendants' argument they could not comply with our May 20, 2019 Order is undermined by the proposed plan Warden Quigley provided us on January 28, 2019 for providing equal treatment for Ms. Victory and the plan provided on July 1, 2019, twenty-seven days after we required Berks County Defendants provide a plan and after Ms. Velazquez-Diaz moved for contempt.[55] Warden Quigley acknowledged in her July 1, 2019 Affidavit safety and security concerns exist with the proposed plan.[56] While they argue they could not provide a plan due to safety concerns, they proposed a plan on July 1, 2019. Berks County Defendants' argument fails.

**2. Berks County Defendants' argument Warden Quigley provided a plan in her June 4, 2019 Affidavit fails.**

Berks County Defendants also argue Warden Quigley proposed a plan in her June 4, 2019 Affidavit. They argue Warden Quigley provided a plan when she swore she was "prepared to move inmate Velazquez-Diaz to the F-Unit Overflow Unit should it be so ordered by the Court with access to bathrooms, showers, and a microwave oven."[57] But in our Findings of Fact and

Conclusions of Law, we already found Berks County Defendants failed to provide conditions for female Trusty inmates in the overflow unit on F Block similar to the conditions provided to male Trusty inmates in the Reentry Center.[58] We rejected Berks County Defendants' argument conditions in the overflow unit on the F Block in the Jail are substantially similar to conditions in the Reentry Center.[59] Captain Castro admitted Berks County would need to make further adjustments to the overflow unit to comply with our May 20, 2019 Order requiring similar freedom of movement offered to male Trusty inmates. Warden Quigley in her June 4, 2019 Affidavit also failed to propose a plan in compliance with the portion of our May 20, 2019 Order requiring similar visitation conditions for Ms. Velazquez-Diaz. Berks County Defendants' argument Warden Quigley provided a plan in her June 4, 2019 Affidavit fails.

#### 3. Berks County Defendants' argument Ms. Velazquez-Diaz failed to move for similar visitation conditions and "retreat to cell" in her motion for preliminary injunction fails.

Berks County Defendants argue because Ms. Velazquez-Diaz in her Motion for preliminary injunctive relief failed to argue differential treatment with respect to visitation conditions and the ability to retreat to a cell, Berks County could not present evidence of safety concerns about these conditions. We do not see how this prevented Berks County Defendants from providing a proposed plan as required in our May 20, 2019 Order requiring Berks County Defendants provide similar freedom of movement and visitation conditions offered to male Trusty inmates in the Community Reentry Center. Berks County Defendants' argument fails.

### B. We impose compensatory sanctions for Berks County Defendants' failure to comply with our May 20, 2019 Order.

As we find Berks County Defendants' failed to obey our May 20, 2019 Order, we impose sanctions for Berks County Defendants' civil contempt. We may order sanctions for civil contempt for two reasons: "[1] to coerce the defendant into compliance with the court's order and [2] to

compensate for losses sustained by the disobedience."[60] Ms. Velazquez-Diaz moves for compensatory sanctions. Compensatory sanctions are "payable to the complainant as compensation for damages caused by the contemnor's noncompliance."[61] We can order compensatory sanctions for failure to obey a preliminary injunction to remedy an Equal Protection violation.[62] Ms. Velazquez-Diaz's counsel may also recover as compensatory sanctions "reasonable attorney's fees for securing the contempt adjudication."[63]

**1. We impose $500.00 in compensatory sanctions for Berks County Defendants' failure to comply with our May 20, 2019 Order.**

Ms. Velazquez argues we should order compensatory sanctions totaling $1,350 for Berks County Defendants' noncompliance with our May 20, 2019 Order.[64] The amount constitutes fifty dollars per day of Berks County Defendants' noncompliance. Ms. Velazquez-Diaz argues Berks County Defendants failed to comply for twenty-seven days—from June 4, 2019 when Berks County Defendants had to file their proposed plan to July 1, 2019, when Berks County Defendants filed a proposed plan.

Ms. Velazquez-Diaz offers no basis for awarding compensatory sanctions totaling fifty dollars for each day of noncompliance. Her counsel admitted at our hearing the difficulty of constructing an amount of compensatory sanctions for a constitutional violation like the one here. We agree it is difficult to measure sanctions for noncompliance. We are also mindful compensatory damages are warranted for violating the Equal Protection Clause. Our role today is not to punish Berks County and Warden Quigley but compensate Ms. Velazquez-Diaz for the continued deprivation of equal protection while Berks County delayed and delayed again. After balancing the goals of an award for civil contempt, and mindful Ms. Velazquez-Diaz remains housed in conditions substantially different than male Trusty inmates but she is not presently losing

income, we impose compensatory sanctions of $500.00 to compensate Ms. Velazquez-Diaz for Berks County Defendants' failure to comply with our May 20, 2019 Order.

**2. We grant Ms. Velazquez-Diaz's attorneys' fees for seeking a contempt finding after responding to the Warden's June 4, 2019 Affidavit.**

Ms. Velazquez-Diaz asks we impose sanctions of attorneys' fees Ms. Velazquez-Diaz incurred in (1) responding to Warden Quigley's June 4, 2019 Affidavit and (2) seeking a contempt finding against Berks County Defendants. Attorneys Matthew Feldman and Sue Ming Yeh submitted affidavits swearing the amount of time expended in responding to Warden Quigley's affidavit and seeking a contempt finding against Berks County Defendants.[65] They swear they "expended a total of 31.5 hours" in (1) seeking a contempt finding against Berks County Defendants and (2) responding to Berks County Defendants' noncompliant June 4, 2019 submission in response to our May 20, 2019 Order. Ms. Velazquez-Diaz argues attorneys' fees total $6,993.00 based on an $222.00 hourly rate allowed under the Prison Litigation Reform Act.[66]

As we find Berks County Defendants in contempt of our Order, we may impose compensatory sanctions for "reasonable attorney's fees for securing the contempt adjudication."[67] Attorneys Feldman and Yeh provide affidavits and timesheets showing time spent responding to Warden Quigley's June 4, 2019 Affidavit and seeking contempt. But in our May 20, 2019 Order, we ordered Ms. Velazquez-Diaz respond to a proposed plan.[68] Since Ms. Velazquez-Diaz would have to respond even if Warden Quigley's June 4, 2019 Affidavit contained a plan, Ms. Velazquez-Diaz's response to the affidavit was not necessary for securing the contempt adjudication. We will not award Ms. Velazquez-Diaz attorneys' fees for responding to Warden Quigley's June 4, 2019 Affidavit. We award Ms. Velazquez-Diaz $6,571.20 in attorneys' fees for securing the contempt adjudication.

### 3. We reject Berks County Defendants' argument we should not impose sanctions because Ms. Velazquez-Diaz fails to show willfulness or bad faith.

Berks County Defendants argue we should not impose sanctions for Ms. Velazquez-Diaz's attorneys' fees because Berks County Defendants did not act in bad faith. Ms. Velazquez-Diaz argues she need not show bad faith to prove civil contempt. We agree with Ms. Velazquez-Diaz.

Our Court of Appeals rejected the argument "a finding of willfulness is a prerequisite to an award of attorneys' fees against the violator of an injunction."[69] Our Court of Appeals, quoting the Court of Appeals for the Fifth Circuit, explained regardless of whether a defendant acts in bad faith in disobeying a court order, the moving party still incurs costs in bring noncompliance to the court's attention:

> [T]he cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order. Because damages assessed in civil contempt cases are oftentimes compensatory (instead of coercive) the mental state of the violator should not determine the level of compensation due.[70]

Ms. Velazquez-Diaz need not show Berks County Defendants acted in bad faith in failing to comply with our May 20, 2019 Order. Ms. Velazquez-Diaz need only show Berks County Defendants failed to comply. She does so. We reject Berks County Defendants' argument.

### 4. We reject Berks County Defendants' argument we should not impose sanctions because they cured contempt by providing a plan on July 1, 2019.

Berks County Defendants further argue even if Warden Quigley's June 4, 2019 Affidavit failed to provide a proposed plan, we should not impose sanctions because they purged themselves of contempt with the July 1, 2019 proposed plan. But even if Berks County Defendants proposed a plan on July 1, 2019, they still failed to comply with our May 20, 2019 Order for twenty-seven days. One goal of contempt sanctions is "to make reparation to the injured party and restore the

parties to the position they would have held had the injunction been obeyed."[71] Berks County Defendants deprived Ms. Velazquez-Diaz of a proposed plan for twenty-seven days. We can impose sanctions to compensate Ms. Velazquez-Diaz for this period of deprivation. Berks County Defendants' argument fails.

**5. We do not impose sanctions against Commissioners Barnhardt, Scott, and Leinbach.**

Berks County Commissioners Barnhardt, Scott, and Leinbach argue because we only ordered Berks County and Warden Quigley to provide a plan, we cannot impose sanctions against them.

We ordered "Berks County, through Warden Quigley," shall provide a proposed plan.[72] Berks County Defendants argued at our contempt hearing Commissioners Barnhardt, Scott, and Leinbach were not involved in meetings for formulating Warden Quigley's June 4, 2019 Affidavit. Ms. Velazquez-Diaz argues in her Motion only "Berks County and Warden Quigley disobeyed the Court's Order because they did not submit a proposed plan."[73] She presents no evidence Commissioners Barnhardt, Scott, or Leinbach formulated or submitted the noncompliant June 4, 2019 Affidavit. We do not impose sanctions against Commissioners Barnhardt, Scott, and Leinbach.

**C. We deny Ms. Velazquez-Diaz's motion to enforce our May 20, 2019 Order as moot since Warden Quigley proposed a plan on July 1, 2019.**

Ms. Velazquez-Diaz moves to enforce our May 20, 2019 Order requiring Berks County Defendants provide a plan for substantially similar treatment for Ms. Velazquez-Diaz. Warden Quigley submitted a proposed plan on July 1, 2019. Ms. Velazquez-Diaz's counsel admitted at our hearing Warden Quigley's July 1, 2019 plan complies with our Order requiring Berks County

propose a plan. We deny Ms. Velazquez-Diaz's Motion to enforce our May 20, 2019 Order as moot.

## III. Conclusion.

In an accompanying Order, we grant Ms. Velazquez-Diaz's Motion for contempt against Berks County and Warden Quigley. We impose compensatory sanctions against Berks County and Warden Quigley consisting of (1) $500.00 to compensate Ms. Velazquez-Diaz for Berks County's and Warden Quigley's noncompliance with our May 20, 2019 Order, and (2) $6,571.20 in attorneys' fees for securing a contempt adjudication. We do not impose sanctions against Commissioners Barnhardt, Scott, and Leinbach. We deny Ms. Velazquez-Diaz's Motion to enforce our May 20, 2019 Order as moot.

---

[1] ECF Doc. No. 1.

[2] ECF Doc. No. 9.

[3] ECF Doc. No. 39.

[4] *Id.* at ¶ 1.

[5] ECF Doc. No. 64.

[6] *Id.* at p. 2.

[7] *Id.*

[8] *Id.*

[9] *Id.* at ¶ 2.

[10] ECF Doc. No. 94.

[11] ECF Docs. No. 108, 109.

[12] ECF Doc. No. 114.

[13] ECF Doc. No. 115.

[14] ECF Doc. No. 135.

[15] *Id.* at p. 1.

[16] ECF Doc. No. 134 ¶ 72.

[17] ECF Doc. No. 135 ¶ 1.

[18] ECF Doc. No. 140.

[19] ECF Docs. No. 137, 142.

[20] ECF Docs. No. 144, 145.

[21] ECF Doc. No. 150.

[22] *Id.* at ¶ 4.

[23] *Id.*

[24] *Id.*

[25] *Id.* at ¶ 5.

[26] *Victory v. Berks County*, No. 19-2193 (3d Cir. Jun. 4, 2019).

[27] ECF Doc. No. 152.

[28] ECF Doc. No. 157.

[29] *Id.* at ¶ 21.

[30] ECF Doc. No. 160.

[31] *Id.*

[32] ECF Doc. No. 175. Over Ms. Velazquez-Diaz's objection, we granted Berks County's motion to continue the civil contempt hearing from July 2, 2019 based on Berks County's representation Warden Quigley would be away on a pre-planned visit with her son out-of-town and it needed her testimony. ECF Doc. No. 170. At our eventual July 9, 2019 hearing, Berks County did not call Warden Quigley as a witness explaining she would only provide cumulative evidence. Ms.

Velazquez-Diaz waited another week for a hearing while we waited for Warden Quigley to return and then not testify.

[33] ECF Doc. No. 178. Warden Quigley submitted a modified affidavit on July 8, 2019. ECF Doc. No. 188. After review, Warden Quigley did not alter the proposed plan in the modified affidavit.

[34] ECF Doc. No. 178 ¶ 5.

[35] *Id.*

[36] *Id.* at p. 6.

[37] *Id.*

[38] *Id.*

[39] *Id.* at p. 7.

[40] ECF Docs. No. 184, 185.

[41] *Roe v. Operation Rescue*, 919 F.2d 857, 868 (3d Cir. 1990).

[42] *John T. ex rel. Paul T. v. Delaware Cty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003).

[43] *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994).

[44] *John T.*, 318 F.3d at 549.

[45] *Id.*

[46] *Id.* at 551.

[47] *Id.* at 554.

[48] *Id.* at 553-54.

[49] ECF Doc. No. 150 ¶ 2.

[50] *Id.* at ¶ 4.

[51] *Id.*

[52] *Id.*

[53] ECF Doc. No. 134 ¶ 72 ("Even assuming Berks County housed [Ms. Velazquez-Diaz] in the overflow unit, it still offers significantly less freedom of movement than it offers male Trusty inmates in the CRC.").

[54] ECF Doc. No. 160, at p. 8.

[55] ECF Doc. No. 178.

[56] *Id.* at ¶ 4.

[57] ECF Doc. No. 150, at p. 2.

[58] ECF Doc. No. 134 ¶ 72.

[59] *Id.* ("Even assuming Berks County housed [Ms. Velazquez-Diaz] in the overflow unit, it still offers significantly less freedom of movement than it offers male Trusty inmates in the CRC.").

[60] *Robin Woods*, 28 F.3d at 400.

[61] *Roe*, 919 F.2d at 868.

[62] *See Greater New Orleans Fair Hous. Ctr. v. St. Bernard Par.*, No. 11-737, 2012 WL 27785, at *5 (E.D. La. Jan. 5, 2012) (allowing compensatory contempt sanctions for failure to comply with preliminary injunction to prevent racial discrimination in housing).

[63] *John T.*, 2003 WL 22006810, at *4 (citing *Halderman by Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 941 (3d Cir. 1995)).

[64] ECF Doc. No. 180, at p. 6.

[65] ECF Doc. No. 180-1.

[66] ECF Doc. No. 180, at p. 7.

[67] *John T.*, 2003 WL 22006810, at *4 (citing *Halderman*, 49 F.3d at 941).

[68] ECF Doc. No. 135 ¶ 2.

[69] *Robin Woods*, 28 F.3d at 400.

[70] *Id.* (quoting *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977)).

[71] *Id.*

[72] ECF Doc. No. 135 ¶ 1.

[73] ECF Doc. No. 157 ¶ 21.