**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THERESA VICTORY**, *et al.* | : | CIVIL ACTION |
| | : | |
| **v.** | : | NO.  18-5170 |
| | : | |
| **BERKS COUNTY**, *et al.* | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                                    April 7, 2020

For several years and until the business day before our November 12-15, 2019 trial, Berks County vigorously defended its historical policy of not providing substantially equivalent treatment regarding freedom of mobility, access to privileges, and visitation to female Trusty inmates housed in its jail compared to male Trusty inmates housed in a nearby Community Reentry Center.  As we found on October 17, 2019 and January 15, 2020, as a matter of law on undisputed facts, and the jury found on disputed facts as to inmate furloughs, Berks County finally stopped violating the Equal Protection rights of female Trusty inmates in response to this case.  The lawyers for the prevailing female Trusty inmates now seek reasonable fees and costs authorized by Congress.  Berks County objects on specific grounds.  We overrule most of its objections.

In September 2018, Trusty inmate Theresa Victory met with the non-profit Pennsylvania Institutional Law Project seeking to stop Berks County's disparate policy.  The Institutional Law Project sued Berks County and its officials for Ms. Victory and a class of similarly situated female Trusty inmates two months later.  Even after we enjoined its unconstitutional policy three times in 2019, Berks County continued its policy resulting in, among other things, our July 2019 finding of civil contempt for its intentional noncompliant conduct.  On the last business day before our November 12, 2019 trial, Berks County moved the male Trusty inmates into the Jail with the same

conditions as the female Trusty inmates. By then, Ms. Victory's counsel incurred over $400,000 in fees at hourly rates set by Congress.

Although it changed its policy to address our findings of law, Berks County still would not concede the disputed issues as to furloughs, compensatory damages, and equitable relief. We proceeded to a jury trial on November 12-15, 2019. Following the jury's verdicts against Berks County on both Class and Ms. Victory's individual claims, Mses. Victory and Velasquez and the Class now seek $540,155.46 in reasonable attorney's fees and costs. Berks County objects arguing part of the requested fees are for two claims brought by Class members who are not prevailing parties, challenging attorney rates for paralegal or clerical work, and challenging certain time entries as vague, duplicative, or excessive. Berks County chose to fight every issue; it only changed its mind as to some issues one business day before facing the jury. Its years of unconstitutional conduct capped by several months of litigation hardball required experienced trial counsel to represent the female Trusty inmates consistent with their professional obligations.

After careful study, we overrule Berks County's objections challenging the number of attorneys representing the Class required to answer Berks County's scorched earth strategy. But we reduce the requested fees as to challenged paralegal or clerical tasks billed at attorney rates and vague or duplicative time entries. Berks County's objections to the Class Counsel's extraordinarily vague description of effort is well grounded. Consistent with Congress's mandate, we award Class Counsel $503,939.20 in reasonable attorney's fees and $3,399.41 in uncontested costs for a total award of $507,330.61.

## I. Background[1]

Theresa Victory and Alice Velazquez-Diaz are former Trusty inmates of the Berks County Jail System. Berks County housed them in the Jail's F-Block while men with the same Trusty classification lived in the County's Community Reentry Center.[2] Mses. Victory and Velazquez-

Diaz sued Berks County for discriminating against women on the basis of sex in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by offering less favorable treatment to female Trusty inmates when considering the totality of living conditions.[3] They sought injunctive and declaratory relief individually and on behalf of a class of present and future female Trusty inmates at the Berks County Jail System.[4] They also individually sought compensatory damages for alleged injuries from the unlawful treatment.[5]

Attorneys from the Pennsylvania Institutional Law Project—Angus Love, Su Ming Yeh, Matthew Feldman, Jim Davy, and Alexandra Morgan-Kurtz—represented Mses. Victory and Velazquez-Diaz throughout this lawsuit. The Pennsylvania Institutional Law Project is "a non-profit organization that provides free civil legal services to indigent institutionalized persons in the Commonwealth of Pennsylvania."[6] Attorney Love is its former Executive Director.[7] Attorney Yeh served as its Deputy Director until recently being named to her current role as its Interim Executive Director.[8] Attorney Feldman is currently a staff attorney, and Attorney Davy is a former staff attorney.[9] Attorney Morgan-Kurtz is its Managing Attorney.[10]

***Class Counsel begins representing the female Trusty inmates and we enjoin the policy.***

Executive Director Attorney Love visited Ms. Victory at Berks County Jail on September 28, 2018.[11] The Pennsylvania Institutional Law Project then began investigating potential claims and eventually drafted a complaint to file on her behalf.[12] Ms. Victory, represented by the Pennsylvania Institutional Law Project, filed a complaint on November 30, 2018 alleging sex discrimination under the Equal Protection Clause and retaliation for asserting her First Amendment rights.[13] Ms. Victory promptly moved to preliminarily enjoin Berks County from discriminating against female Trusty inmates on the basis of sex.[14] We held an evidentiary hearing where Attorneys Love, Yeh, and Feldman appeared.[15] We granted Ms. Victory's motion for a

preliminary injunction supporting by eighty-six findings of fact and conclusions of law.[16] Berks County appealed.[17]

On January 17, 2019, Ms. Victory, joined by two additional female Trusty inmates— Amara Sanders and Samantha Huntington—filed an Amended Complaint.[18] Mses. Victory, Sanders, and Huntington sued individually and on behalf of a class of "current and future female inmates committed to the Berks County Jail System[.]"[19] Mses. Sanders and Huntington moved for injunctive relief similar to the relief we earlier afforded Ms. Victory.[20] Berks County opposed Mses. Sanders's and Huntington's motion and also moved to dissolve the injunction we awarded to Ms. Victory on grounds of mootness as Berks County had now released her from custody.[21] We held another evidentiary hearing where Attorneys Yeh, Feldman, and Davy appeared for Mses. Victory, Sanders, and Huntington.[22] Following the hearing, we denied Mses. Sanders and Huntington's request for a preliminary injunction and dissolved Ms. Victory's injunction upon finding Mses. Huntington and Victory had been released from the custody of the Berks County Jail System and Ms. Sanders had not exhausted her administrative remedies.[23]

### Class Counsel added Ms. Velazquez-Diaz and we again enjoined the policy.

On April 22, 2019, Ms. Victory, joined by another female Trusty inmate, Alice Velazquez-Diaz, filed a second amended complaint with individual claims and for class relief.[24] Two days later, Ms. Velazquez-Diaz moved for preliminary injunctive relief arguing she was "in all relevant respects similarly situated to Ms. Victory when the Court heard her motion for a preliminary injunction [in January 2019]."[25] We held another evidentiary hearing where Attorneys Love, Yeh, and Feldman appeared for Ms. Velazquez-Diaz.[26] Following this hearing, we granted Ms. Velazquez-Diaz's motion for preliminary injunctive relief and ordered Berks County to submit a plan.[27] Berks County appealed this ruling to our Court of Appeals.[28]

In addition to the Equal Protection challenge and Ms. Victory's First Amendment retaliation claim, Mses. Victory and Velazquez-Diaz also asserted a claim under the Equal Rights Amendment of the Pennsylvania Constitution.[29] In June 2019, Berks County moved for summary judgment on all claims. Berks County filed a 1,100-page appendix, which included nine deposition transcripts.[30]

### We narrowed the issues on summary judgment and certified the Class.

In July 2019, we granted Berks County's motion for summary judgment on all claims except the Equal Protection claim.[31] We also granted Mses. Victory's and Velazquez-Diaz's Motion for class certification.[32] We certified Mses. Victory and Velazquez-Diaz as class representatives.[33] We certified Attorneys Love, Yeh, and Feldman of the Pennsylvania Institutional Law Project as Class Counsel.[34] We authorized Class Counsel to "act on behalf of the Class with respect to actions required by, or necessary to be taken under, the Federal Rules of Civil Procedure and this Court's Orders and Policies."[35] Mses. Victory and Velazquez-Diaz sought declaratory and permanent injunctive relief for the Class.[36] They also sought individual damages.

### We held Berks County in civil contempt for violating our Order.

Berks County failed to comply with our injunction requiring it to submit a proposal by a certain date. On the day of our ordered deadline, Berks County submitted an affidavit of Warden Quigley outlining a proposal which we had already rejected as failing to cure the unconstitutional conditions.[37] And despite our Order and Memorandum extensively analyzing the constitutional violations, Warden Quigley swore Berks County "provid[ed] equal housing and services to all inmates that are committed to the [Berks County Jail System]."[38]

Ms. Velazquez-Diaz moved to enforce our preliminary injunction Order and for contempt arguing Warden Quigley did not propose a plan to comply with the preliminary injunction.[39] Berks County responded with Warden Quigley swearing to safety and security concerns concerning visitation conditions at the Jail and the Community Reentry Center but again failed to propose a method for providing similar visitation conditions for male and female Trusty inmates.[40] Almost a month after our ordered deadline, Warden Quigley amended her affidavit and attached a memorandum titled "Housing and Schedule Changes for Female Inmates Classified as 'Trusty.'"[41] Warden Quigley outlined a proposed plan where the Jail would convert the quarantine unit to a female Trusty inmate housing unit. Ms. Velazquez-Diaz objected to this plan on several grounds.

On July 11, 2019, we granted Ms. Velazquez-Diaz's Motion for contempt against Berks County and Warden Quigley imposing compensatory sanctions of $500.00 to Ms. Velazquez-Diaz and $6,571.20 to Ms. Velazquez-Diaz's counsel.[42] We found Ms. Velazquez-Diaz proved: "(1) a valid court order existed, (2) [Berks County] had knowledge of the order, and [Berks County] disobeyed the order."[43]

### We denied summary judgment on the Equal Protection claim but made findings as to undisputed facts.

On September 16, 2019, the parties cross-moved for summary judgment on the Equal Protection claim.[44] The parties submitted over 1,300-pages in a Joint Appendix.[45]

On October 17, 2019, we partially denied the summary judgment cross-motions finding genuine issues of material fact regarding access to furloughs, compensatory damages, and the scope of injunctive relief for the Class.[46] While denying the specific final relief sought in the parties' cross-motions and relying upon undisputed facts, we held as a matter of law: (a) female and male Trusty inmates in the Berks County Jail System are similarly situated; (b) Berks County failed to provide substantially equivalent treatment to female Trusty inmates regarding freedom of

mobility, access to privileges, and visitation when comparing the totality of living conditions of female Trusty inmates housed in the Jail to male Trusty inmates residing in the Community Reentry Center; and, (c) Berks County's policy did not serve an important governmental objective and the housing policy did not substantially relate to an important governmental objective.[47] We concluded "Berks County violated Mses. Victory's and Velazquez-Diaz's rights when it discriminated against them in disparate treatment as to freedom of mobility, access to privileges, and visitation on the basis of sex in violation of the Equal Protection Clause."[48]

### *Class Counsel added two Dechert LLP lawyers for trifurcated trial.*

We then turned to final pretrial efforts necessary to try disputed issues of fact on access to furloughs, compensatory damages, and the scope of injunctive relief for the Class. Berks County requested the trial proceed in three parts with the jury first hearing the remaining liability question as to furloughs, followed by the individual cases for compensatory damages, and then a bench trial on the evidence relating to prospective relief.[49] Berks County moved in *limine* to preclude Ms. Velazquez-Diaz's request for compensatory damages arguing she failed to produce evidence of injury.[50]

The day before the final pre-trial conference, two attorneys from Dechert LLP—Will Sachse and Cory Ward—entered their appearances for Mses. Victory and Velazquez-Diaz.[51] Dechert LLP is an international for-profit law firm with over 900 lawyers. Attorney Sachse is a partner, and Attorney Ward is an associate.[52] Dechert LLP and the Pennsylvania Institutional Law Project agreed to a "Co-Counseling Agreement."[53] The Dechert LLP lawyers "agree[d] to serve as co-counsel in representing [Ms. Victory] with respect to the upcoming trial[.]"[54] Dechert LLP agreed "to donate its respective share of [any] fees awarded to [the Pennsylvania Institutional Law

Project[.]"[55] The lawyers agreed the Pennsylvania Institutional Law Project "shall be lead counsel[.]"[56] The Dechert LLP lawyers never moved to be appointed as Class Counsel.

After the final pre-trial hearing, we resolved post-trial motions and finalized the trial schedule for the remaining liability and damages questions. We dismissed Ms. Velazquez-Diaz's request for compensatory damages as she offered no evidence of a physical injury or actual damages.[57] We granted Berks County's motion to bifurcate the trial and ordered the trial to proceed in three parts by first presenting the remaining liability question on the constitutionality of Berks County's furlough policy, then Ms. Victory's individual case for compensatory damages, and finally a bench trial on the scope of requested prospective relief under 18 U.S.C. § 3626(a)(1).[58] Phases one and two involved jury questions and phase three involved evidence presented in a non-jury trial.

### Berks County changes the challenged policy the last business day before trial.

On the last business day before trial, Berks County filed a "Notice" disclosing the Berks County Commissioners voted (on an unknown date) to move the inmates housed at the Community Reentry Center to the Jail.[59] It represented both male and female Trusty inmates would, effective Friday, November 8, 2019, be housed in the Jail.

### Jury returns verdicts in favor of Class and Ms. Victory.

We held trial from Tuesday, November 12, 2019 to Friday, November 15, 2019. After hearing evidence in the first phase of the trial relating to unequal access to furloughs between male and female Trusty inmates, the jury found Berks County violated the Equal Protection Clause by refusing to provide female Trusty inmates substantially equivalent access to furloughs as male Trusty inmates.[60] The jury found Berks County's furlough policy served an important government interest, but the policy did not substantially relate to the important government interest.[61] In the

second phase of the trial, the jury found Berks County's Equal Protection Clause violation caused Ms. Victory to experience physical or emotional pain and awarded her $2,800 in compensatory damages.[62] In the third non-jury phase of the trial relating to prospective relief, we heard a half-day of testimony from two witnesses who explained Berks County very recently (the business day before trial) decided to close the Reentry Center and move all male Trusty inmates to the Jail. Class Counsel requested limited discovery into these last-minute changes, and to brief mootness issues relating to Berks County's trial-eve change of policy. We granted the limited discovery and supplemental briefing on potential equitable relief.

During the four-day, three-phase trial, five lawyers represented the Class and its representatives Mses. Victory and Velazquez-Diaz. Attorneys Yeh, Feldman, and Morgan-Kurtz appeared from the Pennsylvania Institutional Law Project, and Attorneys Sachse and Ward appeared from Dechert LLP. Attorneys Yeh and Feldman presented each of the opening and closing arguments.[63] Attorney Yeh presented six witnesses, Attorneys Feldman and Sachse each presented four witnesses, Attorney Ward presented two witnesses, and Attorney Morgan-Kurtz presented one witness.[64] The attorneys collectively billed 577.74 hours to prepare and attend trial.[65]

### *We resolved the post-trial equitable relief considering the changed policy.*

After trial, Berks County filed two status reports detailing progress on its trial-eve policy changes to the Trusty inmate housing conditions.[66] The Class continued seeking prospective relief arguing Berks County's trial-eve changes did not moot their claim because of a reasonable probability the unconstitutional conduct would recur. The Class submitted a proposed injunction arguing each of the extensive proposed terms met the needs-narrowness-intrusiveness standard of the Prison Litigation Reform Act. Berks County opposed the injunction request—claiming their

trial-eve policy changes mooted the request—and, even if ripe, the proposed terms of the injunction failed the needs-narrowness-intrusiveness test.

On January 15, 2020, we granted Mses. Victory's and Velazquez-Diaz's request for a permanent injunction, ordering Berks County to provide Trusty women and men substantially equivalent treatment with respect to daily out-of-cell time; access to phones, microwaves, and showers; visitation conditions; and, access to furloughs.[67] We also declined the Class's additional requested conditions as failing the needs-narrowness-intrusive standard under the PLRA and we denied the request for a declaratory judgment.[68]

## II. Analysis

Class Counsel now moves for reasonable attorney's fees and costs arguing the Class and Mses. Victory and Velasquez (on their individual claims) are prevailing parties. Congress authorizes awards of reasonable attorney's fees and costs to "prevailing parties" in lawsuits brought under 42 U.S.C. § 1983.[69] Plaintiffs argue they are prevailing parties entitled to an award of reasonable attorney's fees of $ 536,756.05 and costs of $ 3,399.41 incurred from litigating successful Equal Protection challenges under Section 1983.[70] Berks County objects to the petition for attorney's fees on several specific grounds.[71] It does not object to the billed costs.

Counsel seek fees under Section 1988(b) "based on the lodestar, which is the product of the attorney's hours and rate."[72] We apply a "strong presumption that the lodestar is a reasonable fee."[73] We "may adjust this figure upward or downward when the lodestar is unreasonable."[74] We "apply a burden-shifting analysis to calculate the lodestar."[75] Mses. Victory and Velazquez-Diaz "must produce evidence that the hours spent and rate charged are reasonable."[76] After making this showing, "the burden shifts to the respondent [Berks County] to challenge the attorney's hours, hourly rate, and the reasonableness of the product of those numbers."[77]

Counsel submit attorney time entries (including hours and rate) allowing us to calculate the lodestar, while also attaching declarations supporting why the lodestar is reasonable. They filed a timesheet of the attorneys' billing with approximately 1,355 time entries, totaling 2,381 hours, submitted by seven different lawyers—five from the Pennsylvania Institutional Law Project and two from Dechert LLP. They offer two types of rates: one is limited by Congress in the Prison Litigation Reform Act to 150 percent of Community Justice Act rates ($220.50), and the other is the lawyer's general fair market value.[78] The Class seeks rates consistent with the Prison Litigation Reform Act for time dedicated to its claims. Ms. Victory seeks each attorney's fair market value for time dedicated solely to her compensatory damages claim, ranging from $220.50 to $995.00.[79] They request $536,756.10 in total: $500,683.10 in representing the Class and $36,073.00 in fees billed at the lawyer's respective fair market values for Ms. Victory's individual claim.[80] Mses. Victory and Velazquez-Diaz submit ample evidence showing their requests for fees and costs are the reasonable lodestar. The burden then shifts to Berks County.

Berks County, accepting the burden shift, raises several objections to the lodestar petition based largely on the amount of time spent compared to the results. In sum, it thinks the amount of fees are unreasonable compared to the results as if this case should be measured as a contingency representation with fees limited by the amount of recovery. Berks County first objects to certain time as failing the threshold "prevailing party" requirement. It then argues certain charged rates are unreasonable because the billing event is not an attorney task. Berks County then posits several direct challenges to alleged vague, duplicative, or excessive time. It never argues the hourly rates are incorrect under the PLRA or are unreasonable compared to the market value. After deducting these hours, it argues the requested fees are unreasonable compared to the limited success.

We scrutinize each stated objection. Crucial to our scrutiny is understanding the limited scope of review. Our review is limited to Berks County's objections. We cannot *sua sponte* strike time and rate if otherwise reasonable unless Berks County objects. Our Court of Appeals precludes us from "reduc[ing] counsel fees *sua sponte* as 'excessive, redundant, or otherwise unnecessary' in the absence of a sufficiently specific objection to the amount of fees requested."[81] Our Court of Appeals explained "[t]he rationale for this prohibition on *sua sponte* fee award reductions is twofold. First, *sua sponte* reduction deprives the applicant of the right 'to offer evidence in support of the reasonableness of the request.'"[82] And, "[s]econd because statutory fee litigation is adversarial litigation, there is no need to allow the district court to reduce a fee award on its own initiative."[83] While we may have certain concerns with other aspects of the billing, we cannot *sua sponte* strike time or rates if the paying opposing party does not object on these grounds.[84] With this guidance in mind, we turn to each stated objection to calculate the lodestar.[85]

### A.  Counsel is entitled to reasonable fees in representing the prevailing party.

In addition to seeking $36,073.00 for the time incurred in securing Mses. Victory's and Velazquez's individual claims, the Class petitions for attorney time pursuing the Equal Protection challenge, including time spent dedicated to pursuing claims filed by former named plaintiffs Mses. Huntington and Sanders. Berks County objects to approximately 170 hours of time dedicated to Mses. Huntington's and Sanders's claims arguing this time is not requested by a "prevailing party."

Berks County cites our February 15, 2019 Order dismissing Mses. Huntington's and Sanders's cases as proof these two former female Trusty inmates are not prevailing parties.[86] Berks County does not attempt to distinguish the successful class claim from claims asserted by

Mses. Huntington and Sanders. It does not argue time spent pursuing Mses. Huntington's and Sanders's claims was unnecessary to Class success.

Congress authorizes an award of reasonable attorneys' fees and costs to "prevailing parties" in lawsuits brought under 42 U.S.C. § 1983.[87] "Prevailing parties" are those who "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."[88] To determine whether a party is the "prevailing party," we must ask whether: (1) there is a material alteration of the legal relationship of the parties; and (2) whether the material alteration is judicially sanctioned.[89]

"Regarding the first inquiry, a plaintiff must 'receive at least some relief on the merits of his claim before he can be said to prevail.'"[90] This "inquiry does not turn on the magnitude of the relief obtained."[91] "[E]ven an award of nominal damages will satisfy this test."[92] As to the second inquiry, "enforceable judgments on the merits" are judicially sanctioned.[93] Berks County does not dispute the Class is a prevailing party. The Class received relief on the merits and an enforceable judgment on the merits.

Berks County instead attempts to distinguish Mses. Huntington's and Sanders's efforts pursuing the successful Equal Protection challenge from the Class. Mses. Victory and Velazquez-Diaz concede Mses. Huntington and Ms. Sanders failed on their individual claims. But they argue we should still award attorneys' fees for the time expended on their claims because they were class members and the pursuit of their individual claims contributed to the Class's ultimate success in this litigation. They argue litigation of Mses. Huntington's and Sanders's preliminary injunction motion, their depositions, and the evidentiary hearing on their exhaustion of administrative remedies adduced evidence later used in pursuing class-wide relief found by us and the jury.[94]

"The class as a prevailing party is entitled to recover attorney fees."[95]  We must decide if Mses. Huntington's and Sanders' claims fall within the Class recovery.  While today presents somewhat of a unique question, we are guided by persuasive reasoning from the Court of Appeals for the Eighth Circuit in *Catlett v. Missouri Highway and Transportation Commission*.[96]  In *Catlett*, female applicants for highway maintenance positions sued claiming sex discrimination individually and as a class.  At trial, certain individual claimants lost, but the class prevailed in proving a pattern or practice of discrimination against women.  The Court of Appeals for the Eighth Circuit held the class could recover for individual claims: "[w]e also conclude, however, that fees were properly awarded for time spent pursuing the unsuccessful individual claims."[97]  "A court should not disallow attorney hours related and necessary to successful claims," if the claims are relevant.[98]

We overrule Berks County's objection to fees for work furthering the Class representative and individual claims of Mses. Huntingdon and Sanders.  These efforts related to the successful claims.  These two female Trusty inmates provided evidence and testimony detailing ongoing conduct after Ms. Victory's release.  They suffered the same harm and their temporal relationship to ongoing conduct proved necessary for the injunctive relief.  Berks County would not modify its polices despite Orders requiring compliance.  For example, after releasing Ms. Victory at the term of her one-year sentence, Berks County ignored our specific findings and continued the same conduct.  It continued the same policy until the eve of trial and then promised to work to adopt and implement new policies after trial.  We entered injunctive relief to ensure Berks County did not resort to its long-held vigorously defended policies even after we (and then the jury) found its policies violated the Equal Protection Clause.  Mses. Huntingdon and Sanders offered evidence of continuing violations after our initial preliminary injunction.  They did not proceed to trial only

because of either being released from custody or failing to exhaust an administrative remedy. Counsel represented the prevailing Class and work for Class members providing testimony and proof of Berks County's intransigence in the face of an injunction is both relevant and necessary for our findings of a need for the specific equitable relief.

**B.     We partially grant Berks County's objection to the reasonableness of the charged rate by counsel for paralegal or clerical tasks.**[99]

Berks County objects the Class and Ms. Victory seek an unreasonably high hourly attorney's rate for "easily delegable non-legal work."[100]  The Class and Ms. Victory respond by arguing it is "self-evident . . . that the reasonable attorney's fee provided for by statute should compensate the work of paralegals, as well as that of attorneys."[101]

In *Jenkins*, the Supreme Court permitted an award under Section 1988 to paralegals, law clerks, and recent law school graduates at prevailing rates.[102]  The Court listed the many important tasks paralegals may complete, including "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence."[103]  The Court observed many of these tasks "lie[] in a gray area of tasks that might appropriately be performed either by an attorney or a paralegal."[104]  The Court further observed, however, "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."[105]  Judge Schiller, applying *Jenkins*, commented "an attorney may not recover legal fees for easily delegable non-legal work" and ruled to disregard certain time for filing documents because "the logistics of filing a document with the court do not require an attorney's legal knowledge and training." [106]

To rule on this objection, we must determine the nature of work performed.  If it is work properly performed by a lawyer, we will overrule the objection to the proposed rate.  If it is work

which unquestionably should have been performed paralegal, we will grant the objection to reduce the rate to the prevailing paralegal rate ($200). If we deem the work to be delegable non-legal work, we will grant the objection and strike the fee request.

Berks County's specifically objects the rates billed as:

| Challenged time entries with bolded or italicized sustained objections | | | | |
|---|---|---|---|---|
| Date of Service | Attorney | Time Spent | Activity Code | Activity Details |
| 11/30/2018 | Matthew A. Feldman | 1 | Filing Papers (GB) | *File complaint* |
| 12/7/2018 | Jim Davy | 1 | Filing Papers (GB) | *Filing PI Motion and Brief; talking to Matt about same, and service* |
| 12/11/2018 | Matthew A. Feldman | 1 | Document Preparation/Review (G) | **printing/mailing motion to exceed page limit for PI brief** |
| 12/28/2018 | Jim Davy | 1 | Document Preparation/Review (G) | *compile/Bates stamp documents for production* |
| 1/2/2019 | Jim Davy | 2 | Consult with Colleagues (CC) | Conversations w/Matt and Bates stamping new production |
| 2/7/2019 | Matthew A. Feldman | 0.5 | Prepare for Hearing (J) | *prep exhibit binders for PI hearing* |
| 4/17/2019 | Matthew A. Feldman | 0.5 | Case Related General (A) | write up research assignment for intern & discuss w/ SMY |
| 4/18/2019 | Matthew A. Feldman | 0.5 | Case Related General (A) | **scan & send medical releases** |
| 4/26/2019 | Matthew A. Feldman | 0.5 | Case Related General (A) | investigating/booking interpreter |
| 4/29/2019 | Matthew A. Feldman | 2 | Document Preparation/Review (G) | redact cl's journal for RPD |
| 4/29/2019 | Matthew A. Feldman | 0.3 | Case Related General (A) | logistics re bringing interpreter to Jail |
| 4/30/2019 | Matthew A. Feldman | 0.2 | Prepare for Hearing (J) | phone call & email re interpreter for 5/15 hrg |
| 5/2/2019 | Matthew A. Feldman | 0.5 | Document Preparation/Review (G) | *Bates stamping* |

| | | | | |
|---|---|---|---|---|
| 5/2/2019 | Matthew A. Feldman | 1 | Document Preparation/Review (G) | revise interrog responses; certs of service |
| 5/8/2019 | Matthew A. Feldman | 0.3 | Case Related General (A) | phone call & email to Lois Weaver (interpreter) |
| 5/9/2019 | Matthew A. Feldman | 0.2 | Case Related General (A) | **arrange for rental car and interpreter for 5/14 client visit** |
| 5/9/2019 | Matthew A. Feldman | 4.6 | Document Preparation/Review (G) | review Ds' disco responses & assemble exhibits for PI hrg |
| 5/10/2019 | Matthew A. Feldman | 1.5 | Document Preparation/Review (G) | compile exhibits for PI hrg |
| 5/21/2019 | Matthew A. Feldman | 1 | Document Preparation/Review (G) | review/Bates stamp/produce medical records |
| 5/21/2019 | Matthew A. Feldman | 0.3 | Case Related General (A) | **calls to clerk's office and chambers re injunction bond** |
| 5/28/2019 | Matthew A. Feldman | 1 | Consult with Colleagues (CC) | discuss class cert brief w/ SMY & interns |
| 5/30/2019 | Matthew A. Feldman | 0.2 | Case Related General (A) | review interns' notes on transcripts and give feedback |
| 6/4/2019 | Matthew A. Feldman | 1 | Filing Papers (GB) | print and file courtesy copy of class cert materials |
| 6/4/2019 | Matthew A. Feldman | 0.3 | Filing Papers (GB) | **print and prepare class cert docs for paper filing** |
| 6/6/2019 | Matthew A. Feldman | 0.2 | Consult with Colleagues (CC) | assignment email to intern re contempt |
| 6/10/2019 | Matthew A. Feldman | 0.2 | Consult with Colleagues (CC) | discuss assignments w/ Annie (intern) |
| 6/12/2019 | Matthew A. Feldman | 0.2 | Consult with Colleagues (CC) | convo w/ interns re MSJ response statement of facts |
| 6/12/2019 | Matthew A. Feldman | 0.2 | Case Related General (A) | read mail from Alice; scan, copy, & email write-ups |
| 6/18/2019 | Matthew A. Feldman | 0.6 | Filing Papers (GB) | **courtesy copy of MSJ materials** |
| 6/21/2019 | Matthew A. Feldman | 0.3 | Letter/Correspondence (F) | **mail recent filings to cl** |

| 6/24/2019 | Matthew A. Feldman | 0.3 | Consult with Colleagues (CC) | assignment emails to interns |
|---|---|---|---|---|
| 6/24/2019 | Matthew A. Feldman | 0.6 | Consult with Colleagues (CC) | convos w/ SMY and interns |
| 7/9/2019 | Matthew A. Feldman | 0.3 | Case Related General (A) | scan & read docs from Alice and send to SMY & AL |
| 7/9/2019 | Matthew A. Feldman | 0.4 | Consult with Colleagues (CC) | talk to interns & MB about contempt hrg |
| 7/22/2019 | Matthew A. Feldman | 0.2 | Case Related General (A) | **scan letter from cl (AVD) and email SMY** |
| 7/23/2019 | Matthew A. Feldman | 0.2 | Case Related General (A) | **arrange for rental car and interpreter for 7/26 client visit** |
| 7/24/2019 | Matthew A. Feldman | 0.2 | Case Related General (A) | arranging interpreter for client visit |
| 7/24/2019 | Matthew A. Feldman | 0.3 | Case Related General (A) | assignment email to intern re appealability of contempt order |
| 7/25/2019 | Matthew A. Feldman | 0.3 | Case Related General (A) | phone calls w/ Lois Weaver & Berks County Jail re interpretation/visits |
| 7/25/2019 | Matthew A. Feldman | 0.4 | Case Related General (A) | phone calls/emails re interpreter for client visit |
| 8/16/2019 | Matthew A. Feldman | 0.5 | Investigation of Facts (D) | look up CRC men on Vinelink |
| 8/19/2019 | Matthew A. Feldman | 0.5 | Investigation of Facts (D) | look up CRC men on Vinelink |
| 9/3/2019 | Matthew A. Feldman | 0.3 | Document Preparation/Review (G) | *Bates stamp and produce docs re furlough data* |
| 9/11/2019 | Matthew A. Feldman | 3 | Document Preparation/Review (G) | *compiling MSJ appendix* |
| 9/11/2019 | Matthew A. Feldman | 2.2 | Document Preparation/Review (G) | *compiling MSJ appendix* |
| 9/17/2019 | Matthew A. Feldman | 0.5 | Filing Papers (GB) | **print and file courtesy copy of MSJ materials** |
| 9/27/2019 | Angus Love | 3.5 | Interview/Advise Client (CB) | trip to Reading to get affidavit |

| Date | Name | Hours | Category | Description |
|------|------|-------|----------|-------------|
| 9/30/2019 | Su Ming Yeh | 0.5 | Document Preparation/Review (G) | Compile suppl jt appx |
| 9/30/2019 | Su Ming Yeh | 0.3 | Filing Papers (GB) | File motion for extension, fax letter to court |
| 10/8/2019 | Matthew A. Feldman | 0.3 | Document Preparation/Review (G) | **prepare courtesy copy of reply brief, cover letter** |
| 10/15/2019 | Matthew A. Feldman | 4 | Prepare for Hearing (J) | exhibit list |
| 10/21/2019 | Matthew A. Feldman | 0.5 | Document Preparation/Review (G) | **prepare cover letter and courtesy copies of exhibits & transcripts** |
| 10/22/2019 | Matthew A. Feldman | 0.5 | Case Related General (A) | **download Ds' filings** |
| 10/24/2019 | Matthew A. Feldman | 0.5 | Case Related General (A) | **print and deliver courtesy copies of contested exhibits** |
| 10/29/2019 | Matthew A. Feldman | 0.8 | Case Related General (A) | subpoenas for witnesses |
| 10/31/2019 | Matthew A. Feldman | 0.2 | Case Related General (A) | email to ST re setting up visits with witnesses |
| 10/31/2019 | Matthew A. Feldman | 0.7 | Document Preparation/Review (G) | download and review MIL orders; email to AMK & SMY |
| 10/31/2019 | Matthew A. Feldman | 0.6 | Document Preparation/Review (G) | subpoena for AOPC employee; amended PT Memo |
| 11/6/2019 | Matthew A. Feldman | 0.2 | Document Preparation/Review (G) | *notice re writs for incarcerated witnesses* |
| 11/19/2019 | Matthew A. Feldman | 1 | Case Related General (A) | **witness checks** |
| 12/10/2019 | Alexandra Morgan-Kurtz | 0.1 | Case Related General (A) | **filings** |
| **TOTAL = 48 Hours** | | | | |

We partially grant Berks County's objections to the billing of attorney rates for paralegal or clerical tasks. We appreciate the diligent efforts from the Pennsylvania Institutional Law Project. Its lawyers, paralegals, and staff vigorously advocate for those in custody. The lawyers in this case addressed each issue shown to us with exemplary professionalism and matched a

commercial law firm retained by Berks County in each aspect of this difficult case. Berks County did not alter its policies, notwithstanding our several findings resulting in injunctions, until the eve of trial.

But we cannot approve attorney hourly rates for services which should be billed by paralegals or not billed as staff tasks considered part of overhead. For example, as bolded above, we cannot reimburse for time spent in "copying," "filing," "downloading," and arranging for rental cars. We deduct 7.0 hours (or $1,543.50) spent on these clerical tasks which should not have been billed by lawyers or paralegals. We also reduce the attorney hourly rate to the paralegal approved rate of $200 for paralegal tasks. For example, and as italicized in the chart above, we reduce the hourly rate to the experienced paralegal rate of $200 for Bates-stamping, compiling appendices, preparing notices, and filing the complaint and initial papers. There can be no dispute the billing attorneys would be considered as having the skill of an experienced paralegal as to these billing entries. We reduce the attorney hourly rate to $200 for the 9.7 hours billed by attorneys for paralegal tasks and deduct another $198.85 from the total recovery. We recognize this time may have been for more detailed tasks or involved professional judgment of an attorney, but the lawyers' billing entries did not adequately describe this level of care.

    **C.**    **We partially sustain Berks County's challenges to the reasonableness of the number of hours billed.**

        **1.**    **We overrule the "limited success" objection.**

Berks County argues the total attorney's fee award must be reduced because many claims failed, and hours billed to those dismissed claims should be discounted. They point to unsuccessful claims dismissed on summary judgment, including Ms. Victory's First Amendment retaliation claim. They argue Ms. Victory's $2,800 compensatory damages award is only a limited success. The Class and Ms. Victory respond by arguing they excluded hours expended exclusively on failed

claims in their fee petition. They further argue the size of the damages award obtained by Ms. Victory is not an appropriate basis on which to reduce Plaintiffs' fee award for work performed solely on her behalf.

As the Class and Ms. Victory concede, they achieved "only limited success," and we should "award only that amount of fees that is reasonable in relation to the results obtained."[107] The Class and Ms. Victory explicitly exclude time expended on unsuccessful claims. Berks County does not dispute this. But Berks County disputes the overall success of the litigation by highlighting failed claims to show the "results cannot be considered [a] significant success in light of the hours, quantity, and quality of the attorneys representing Plaintiffs in this matter."[108] But as our Court of Appeals observed by looking to *Hensley*: "there is 'no precise rule or formula' in making [a limited success] determination but advised district courts that they 'may attempt to identify specific hours that should be eliminated, or [ ] simply reduce the award to account for the limited success.'"[109]

As the Supreme Court directs, "when ... a material alteration in the legal relationship of the parties has occurred, 'the degree of the plaintiff's overall success goes to the reasonableness of the award … not to the availability of a fee award *vel non*.'"[110]

When a plaintiff's claims for relief "involve a common core of facts or [are] based on related legal theories … the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."[111] "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee."[112] This is especially true where counsel "carefully separate[s] the time spent on … unsuccessful claims from that spent on successful claims and d[oes] not even seek reimbursement for them."[113] "[W]here a plaintiff achieved only limited

success, the district court should award only that amount of fees that is reasonable in relation to the results obtained."[114]

Berks County also wishes to reduce the fee allocated to Ms. Victory's individual recovery because "the jury award for Ms. Victory was a meager $2,800.00."[115]  In *Washington*, our Court of Appeals held "a court may not diminish counsel fees in a section 1983 action to maintain some ratio between the fees and the damages awarded."[116]  In reaching this holding, our Court of Appeals looked to the Supreme Court's plurality in *City of Riverside v. Rivera* where Justice Brennan stated:

> [u]nlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms. ... Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards.[117]

Nevertheless, "the amount of the compensatory damages award may be taken into account when awarding attorneys' fees to a civil rights plaintiff."[118]

We may, but are not required to, consider settlement negotiations in awarding attorney's fees.  "[S]ettlement negotiations may be relevant in measuring success" but we are "also free to reject such evidence as not bearing on success."[119]  Berks County argues we should discount fees relating to Ms. Victory's compensatory damages claim because she initially requested $160,000.  But Ms. Victory responds Berks County never offered a meaningful counteroffer to this demand.

We overrule Berks County's objection to the size of the Class success – especially after Berks County conceded most of the requested equitable relief on the last business day before trial.  Every case has theories which may not proceed to trial or win at trial.  A judge's role is to narrow the issues if necessary, before trial.  Our narrowing of the Class claims does not equate to frivolousness of the dismissed claims.  Unlike cases where a judge may discount hours spent on frivolous theories unrelated to the success, all of Ms. Victory's claims are directly related to the

Class success and her verdict. Berks County's policy equally affected her and the Class. Class Counsel sought to stop this policy. Class Counsel overwhelmingly succeeded. Class Counsel did not include time entries unrelated to the core questions presented in the successful summary judgment cross-motion and to the jury. Ms. Victory's monetary award is a testament, not an indictment, of her theory. She and Ms. Velasquez are entitled to fees for winning the civil rights case. The jury returned a compensatory damage verdict based on the evidence of her damages. The Class succeeded on its claims. It did not lose a claim which would have afforded it more expansive equitable relief. We find nothing "limited" in the Class success.

### 2. We strike vague descriptions.

Berks County argues certain entries in the Class and Ms. Victory's petition are not specific enough to allow us to determine the reasonableness of the work performed. The Class and Ms. Victory concede certain entries are insufficiently specific,[120] but otherwise argue their entries are sufficiently specific to allow us to evaluate the reasonable of the entries.

Entries must "be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed."[121] In *Clemens*, our Court of Appeals explained "entries billing for attorney services described as 'Other,' 'Communicate,' or 'Communicate-other' … [and] 'Attorney review,' 'Analysis/Strategy,' or 'Review/analyze' with no additional explanation regarding the subject or necessity of the review … [are] nowhere near specific enough" to allow a District Judge to determine reasonableness.[122]

Our Court of Appeals found entries such as "att[entio]n to papers" and "att[entio]n to status" without indicating "what 'papers' or 'status'" to which the attorney attended, and entries such as "e-mails," "conference call," "correspondence" and "review papers" are insufficient to determine if the hours claimed are unreasonable for the work performed.[123] "[S]pecificity should only be

required to the extent necessary for the district court to determine if the hours claimed are unreasonable for the work performed."[124]

We inspect the entries Berks County claims are insufficiently specific:

| Challenged time entries with bolded or italicized sustained objections | | | | |
|---|---|---|---|---|
| Date of Service | Attorney | Time Spent | Activity Code | Activity Details |
| 8/30/2018 | Angus Love | 2 | File Maintenance (AA) | **misc, consult colleagues** |
| 11/1/2018 | Jim Davy | 1 | Consult with Colleagues (CC) | **Call w/co-counsel** |
| 11/16/2018 | Jim Davy | 2.5 | Consult with Colleagues (CC) | **Corr. w/Matt** |
| 11/19/2018 | Jim Davy | 1.2 | Consult with Colleagues (CC) | **Call w/Angus, Matt, Theresa, other counsel** |
| 11/26/2018 | Jim Davy | 0.8 | Consult with Colleagues (CC) | **Corr. w/Matt** |
| 11/28/2018 | Jim Davy | 2 | Consult with Colleagues (CC) | **Call w/Angus/Matt/WLP** |
| 12/11/2018 | Angus Love | 1 | Consult with Colleagues (CC) | **discuss** |
| 12/13/2018 | Angus Love | 1 | Legal Staff Supervision (M) | **conference call** |
| 12/13/2018 | Angus Love | 3 | Consult with Colleagues (CC) | **discuss and research** |
| 12/13/2018 | Matthew A. Feldman | 0.8 | Consult with Colleagues (CC) | **conference call w/ Jim, Su Ming, Angus** |
| 12/17/2018 | Jim Davy | 1.5 | Telephone Conference\(E) | **Status conference and debrief** |
| 12/17/2018 | Jim Davy | 1 | Consult with Colleagues (CC) | **Status conference prep** |
| 12/18/2018 | Angus Love | 2 | Document Preparation/Review (G) | **misc, mail, telephone, e mail etc**. |
| 12/20/2018 | Jim Davy | 2 | Consult with Colleagues (CC) | **Talk w/Matt and Angus** |
| 1/2/2019 | Angus Love | 3 | Consult with Colleagues (CC) | **staff meeting** |
| 1/9/2019 | Angus Love | 7 | Prepare for Hearing (J) | **hearing tomorrow** |
| 1/14/2019 | Angus Love | 2 | Investigation of Facts (D) | **post PI hrg misc** |

| Date | Name | Hours | Category | Description |
|---|---|---|---|---|
| 1/16/2019 | Matthew A. Feldman | 1 | Consult with Colleagues (CC) | discuss next steps |
| 1/18/2019 | Angus Love | 3 | Consult with Colleagues (CC) | **misc/ motions/strategy** |
| 1/21/2019 | Angus Love | 3 | Document Preparation/Review (G) | **reviewed memo, misc.** |
| 1/25/2019 | Matthew A. Feldman | 1 | Consult with Colleagues (CC) | **discuss case w/ Jim** |
| 1/30/2019 | Matthew A. Feldman | 0.5 | Case Related General (A) | **misc. post-dep tasks and emails** |
| 2/11/2019 | Jim Davy | 1.5 | Consult with Colleagues (CC) | **Debrief w/Matt and Su Ming** |
| 3/5/2019 | Angus Love | 4 | Interview/Advise Client (CB) | interview at BCJ |
| 3/14/2019 | Matthew A. Feldman | 0.2 | Consult with Colleagues (CC) | **discuss w/ SMY & AL** |
| 3/18/2019 | Angus Love | 4 | Interview/ Advise Client | Interview her and others |
| 3/19/2019 | Matthew A. Feldman | 0.3 | Consult with Colleagues (CC) | **discussions w/ AL, SMY** |
| 3/22/2019 | Su Ming Yeh | 0.2 | Consult with Colleagues (CC) | Discuss case strategy w- MF, AL |
| 3/27/2019 | Matthew A. Feldman | 0.5 | Consult with Colleagues (CC) | **emails w/ AL & SMY** |
| 4/16/2019 | Angus Love | 1 | Consult with Colleagues (CC) | **discuss next steps** |
| 4/17/2019 | Angus Love | 1 | Consult with Colleagues (CC) | **misc** |
| 4/17/2019 | Matthew A. Feldman | 0.5 | Case Related General (A) | write up research assignment for intern & discuss w/ SMY |
| 4/26/2019 | Matthew A. Feldman | 0.2 | Consult with Colleagues (CC) | **email to WLP** |
| 5/1/2019 | Matthew A. Feldman | 0.2 | Consult with Colleagues (CC) | **update AL** |
| 5/2/2019 | Angus Love | 1 | Consult with Colleagues (CC) | **consult colleagues** |
| 5/8/2019 | Matthew A. Feldman | 1.5 | Case Related General (A) | misc organizational tasks (printing docs, tracking deadlines, etc) |
| 5/9/2019 | Angus Love | 1 | Consult with Colleagues (CC) | plan for next hearing |
| 5/10/2019 | Angus Love | 1 | Consult with Colleagues (CC) | **review materials** |

| 5/13/2019 | Matthew A. Feldman | 0.4 | Consult with Colleagues (CC) | **convos w/ SMY** |
|---|---|---|---|---|
| 5/22/2019 | Alexandra Morgan-Kurtz | 0.4 | Document Preparation/Review (G) | **ems & rvg ext req L** |
| 5/24/2019 | Angus Love | 1 | Consult with Colleagues (CC) | **discuss case** |
| 5/24/2019 | Matthew A. Feldman | 0.7 | Consult with Colleagues (CC) | **discuss case w/ SMY** |
| 5/28/2019 | Angus Love | 0.5 | Consult with Colleagues (CC) | **discuss** |
| 5/29/2019 | Angus Love | 1 | Investigation of Facts (D) | prep for visits |
| 6/6/2019 | Angus Love | 1 | Consult with Colleagues (CC) | **discuss case** |
| 6/12/2019 | Matthew A. Feldman | 0.3 | Consult with Colleagues (CC) | **phone call w/ SMY** |
| 6/21/2019 | Angus Love | 1 | Consult with Colleagues (CC) | **misc** |
| 6/24/2019 | Matthew A. Feldman | 0.3 | Consult with Colleagues (CC) | assignment emails to interns |
| 6/24/2019 | Matthew A. Feldman | 0.6 | Consult with Colleagues (CC) | **Convos / SMY and interns** |
| 6/26/2019 | Mathew A. Feldman | 0.3 | Consult with Colleagues | **Convos w/ SMY** |
| 7/9/2019 | Matthew A. Feldman | 0.4 | Consult with Colleagues (CC) | talk to interns & MB about contempt hrg |
| 7/10/2019 | Angus Love | 2 | Consult with Colleagues (CC) | review file |
| 7/17/2019 | Alexandra Morgan-Kurtz | 0.1 | Consult with Colleagues (CC) | ems re amicus brief |
| 7/22/2019 | Angus Love | 1 | Consult with Colleagues (CC) | **misc** |
| 7/24/2019 | Angus Love | 1 | Consult with Colleagues (CC) | **misc** |
| 7/29/2019 | Angus Love | 1 | Consult with Colleagues (CC) | **discussed case** |
| 10/15/2019 | Matthew A. Feldman | 0.5 | Case Related General (A) | prep for jail visit |
| 10/15/2019 | Matthew A. Feldman | 4 | Prepare for Hearing (J) | exhibit list |
| 10/25/2019 | Angus Love | 0.5 | File Maintenance (AA) | review e mails |
| 10/28/2019 | Matthew A. Feldman | 0.2 | Legal Research (H) | Edmo v. Corizon |

| Date | Name | Hours | Task | Description |
|---|---|---|---|---|
| 10/30/2019 | Angus Love | 1 | File Maintenance (AA) | **misc, consult colleagues** |
| 10/31/2019 | Matthew A. Feldman | 1 | Prepare for Hearing (J) | *trial prep* |
| 11/1/2019 | Matthew A. Feldman | 1.4 | Prepare for Hearing (J) | *trial prep* |
| 11/3/2019 | Matthew A. Feldman | 8 | Prepare for Hearing (J) | *trial prep* |
| 11/5/2019 | Alexandra Morgan-Kurtz | 0.3 | Document Preparation/Review (G) | **NoA** |
| 11/6/2019 | Will Sachse | 8.9 | NA | *Trial preparation* |
| 11/7/2019 | Cory Ward | 13.4 | NA | *Trial preparation* |
| 11/7/2019 | Matthew A. Feldman | 7 | Prepare for Hearing (J) | *trial prep* |
| 11/7/2019 | Will Sachse | 6.6 | NA | *Trial preparation* |
| 11/8/2019 | Alexandra Morgan-Kurtz | 0.1 | Case Related General (A) | **notice** |
| 11/8/2019 | Alexandra Morgan-Kurtz | 0.7 | Consult with Colleagues (CC) | **ems** |
| 11/8/2019 | Cory Ward | 12.8 | NA | Trial preparation; read background materials; review trial exhibits; review background material; prepare direct examinations |
| 11/8/2019 | Matthew A. Feldman | 14 | Prepare for Hearing (J) | *trial prep* |
| 11/8/2019 | Will Sachse | 5.9 | NA | *Trial preparation* |
| 11/9/2019 | Cory Ward | 1.2 | NA | Trial preparation; read background material; review trial exhibits; review motions and responses; prepare direct examinations. |
| 11/9/2019 | Matthew A. Feldman | 8 | Prepare for Hearing (J) | *trial prep* |
| 11/9/2019 | Will Sachse | 7.1 | NA | *Trial preparation* |
| 11/10/2019 | Cory Ward | 5.6 | NA | Trial preparation; prepare direct examinations. |
| 11/10/2019 | Will Sachse | 6.4 | NA | *Trial preparation* |
| 11/11/2019 | Alexandra Morgan-Kurtz | 5.4 | Prepare for Hearing (J) | *trial prep* |
| 11/11/2019 | Matthew A. Feldman | 12 | Prepare for Hearing (J) | *trial prep* |

| | | | | |
|---|---|---|---|---|
| 11/11/2019 | Will Sachse | 10.6 | NA | *Trial preparation* |
| 11/12/2019 | Alexandra Morgan-Kurtz | 4.9 | Prepare for Hearing (J) | *trial prep* |
| 11/12/2019 | Alexandra Morgan-Kurtz | 3.3 | Prepare for Hearing (J) | *trial team strategy meeting & prep* |
| 11/12/2019 | Matthew A. Feldman | 5 | Prepare for Hearing (J) | *trial prep* |
| 11/13/2019 | Matthew A. Feldman | 3 | Prepare for Hearing | *Trial prep* |
| 11/14/2019 | Alexandra Morgan-Kurtz | 2.7 | Prepare for Hearing (J) | *trial prep/strategy meeting* |
| 11/14/2019 | Matthew A. Feldman | 2 | Consult with Colleagues (CC) | *team meeting* |
| 11/14/2019 | Matthew A. Feldman | 1.5 | Prepare for Hearing (J) | *trial prep* |
| 11/15/2019 | Alexandra Morgan-Kurtz | 1.8 | Consult with Colleagues (CC) | *trial debrief discussions* |
| 11/15/2019 | Alexandra Morgan-Kurtz | 0.3 | Prepare for Hearing (J) | *trial/hearing prep* |
| 11/19/2019 | Matthew A. Feldman | 0.2 | Consult with Colleagues (CC) | **email to external colleague** |
| 11/20/2019 | Matthew A. Feldman | 0.3 | Case Related General (A) | **outreach re next steps** |
| 12/10/2019 | Alexandra Morgan-Kurtz | 0.1 | Case Related General (A) | **filings** |
| **TOTAL = 241.1 HOURS** | | | | |

As noted in the sustained objections bolded or italicized above, we agree with many of Berks County's objections. Counsel seeking court approval of their fees should bill as though the Court is the paying client. Experienced counsel must know the days of rubber-stamping attorney invoices (if ever there was such a day) are certainly over for experienced clients and courts. This same rule applies to non-profit legal organizations. It is a fundamental tenet of client communications. We need to know what you did for the time you are billing. The days of block time billing with no description of purpose or subject other than an action such as "confer" or "prep" or "email" need to stop. We are not aware of experienced clients paying for this type of

billing and would hope counsel would not pay their personal contractors for "work" or "prep" without knowing what the contractors are doing.

We strike the **bolded** entries above equating to 59.9 hours in their entirety and deduct $13,207.95 as we simply cannot imagine what the lawyers were doing for the time billed in those bolded entries. We have no subject matter whatsoever. We discount the *italicized* entries equating to 140 hours above by fifty percent and deduct $15,435.00. We credit half of the time billed in these italicized entries as we can appreciate "trial" involves a great number of tasks and we witnessed counsel prepared and ready to address every issue. Counsel demonstrated skill and experience borne of hard work. They certainly did not "wing-it." But we cannot find the entire amount of italicized time billed is reasonable when the entries do not tell us what counsel did during this billed time. Counsel should detail the subject matter of their action. They did so in many instances. For example, we overrule Berks County's objections to "trial preparation; prepare direct examination." In this entry, we understand (at least can fairly infer) what the billing lawyer did on November 10, 2019 for the 5.6 hours of "trial prep." We cannot otherwise guess for so many of the challenged entries.

We sustain Berks County's objection to vague entries to the extent of $28,642.95 discounted from the petition representing time not adequately described leaving us with vague understanding of what the lawyers were doing for those time entries. We recognize this is an expensive lesson for counsel, but their billing practices leave us no choice. Billing time for timesheet credit is not our concern. When you are asking someone to pay for your time, you need to describe it. If you are going to work so hard for this success, you should describe your efforts both as to action and purpose. Why hide your effort? Why not take the extra minute (albeit often

after a long day) to specifically describe your hard work?  If you want people to pay for your work, you should describe your effort so they know what you did for their benefit.

### 3.  Excessive time.

Berks County also argues certain time billed by Mses. Victory and Velazquez-Diaz's counsel is excessive.  We must specifically consider the amount of time billed to rule on these objections.  Mses. Victory and Velazquez-Diaz oppose this objection but accept if any reduction must be applied it should be a ten percent reduction.

Before our specific review, we note there is often a "thin line … between a reasonable and unreasonable expenditure of time in pursuit of a client's cause," and sometimes the benefit of the doubt must be given to the plaintiff's counsel that, as "officers of the court," they have exercised the requisite "billing judgment."[125]  Our Court of Appeals has "emphasize[d]" that defendants "cannot merely allege in general terms that the time spent was excessive."[126]

### i.  Consulting with colleagues.

Berks County specifically objects to Mses. Victory and Velazquez-Diaz's 372 time entries billing approximately 205 hours for "consulting with colleagues."[127] Supporting this objection, Berks County cites *Citibank, N.A. v. Hicks*.[128]  In *Hicks*, Judge Yohn granted summary judgment for Citibank who then petitioned for attorney's fees.  Judge Charles Smith ruled on Citibank's petition.  In his Memorandum, Judge Smith explained Mr. Hicks objected to many of Citibank's requests, including for "attorney conferencing."  Judge Smith considered 111.4 hours attributed to attorney conferencing out of the approximately 430 hours submitted in the fee petition to be plainly excessive and applied a one-half reduction to this time.

Berks County asks for the same one-half reduction as applied in *Hicks.* Mses. Victory and Velazquez-Diaz oppose this request. They argue this time is not unwarranted especially because "Defendants litigated the case in a particularly unyielding manner."[129]

Berks County identifies excessive time spent consulting with colleagues:

| Challenged time entries for consulting as bolded for sustained objections | | | | |
|---|---|---|---|---|
| Date of Service | Attorney | Time Spent | Activity Code | Activity Details |
| 11/9/2018 | Jim Davy | 2 | Legal Research (H) | Conversation w/Matt re: Rinaldi and exhaustion |
| 11/21/2018 | Jim Davy | 2 | Document Preparation/Review (G) | Edit draft complaint/talk w/Matt and Angus re: Theresa and facts |
| 11/26/2018 | Jim Davy | 1 | Document Preparation/Review (G) | Edit most recent version of complaint/corr. w/Matt |
| 12/6/2018 | Jim Davy | 2 | Document Preparation/Review (G) | Reviewing Brief for PI/commenting on it and talking w/Matt |
| 12/7/2018 | Jim Davy | 1 | Filing Papers (GB) | Filing PI Motion and Brief; talking to Matt about same, and service |
| 12/12/2018 | Matthew A. Feldman | 3.2 | Case Related General (A) | consult w/ Jim, Su Ming re next steps, work on PI brief |
| 12/12/2018 | Su Ming Yeh | 0.3 | Telephone Conference (E) | Call w-M.Feldman re prelim inj brief |
| 12/18/2018 | Su Ming Yeh | 1.1 | Document Preparation/Review (G) | Review/edit/comment on discovery requests, discuss w-MF, AL |
| 12/26/2018 | Matthew A. Feldman | 0.2 | Letter/Correspondence (F) | review letter from cl. and discuss w/ Angus |
| 12/28/2018 | Su Ming Yeh | 1.3 | Document Preparation/Review (G) | Review discovery responses, documents, and email MF |
| 1/2/2019 | Su Ming Yeh | 1.1 | Prepare for Hearing (J) | Discuss pre-hearing memo w-MF, review documents |

| 1/3/2019 | Su Ming Yeh | 1 | Hearing (K) | Hearing prep and strategy w-AL, MF |
|---|---|---|---|---|
| 1/9/2019 | Su Ming Yeh | 9 | Prepare for Hearing (J) | Prep for PI hearing--draft outlines, review exhibits, investigation, meet w-co-counsel |
| 1/16/2019 | Su Ming Yeh | 1 | Document Preparation/Review (G) | Review motion for stay, motion to seal, motion for reconsideration, emails to co-counsel re motions |
| 1/16/2019 | Su Ming Yeh | 0.2 | Letter/Correspondence (F) | Emails to/fro co-counsel re ct order, findings of fact, conclusions of law |
| 1/17/2019 | Jim Davy | 1.5 | Legal Research (H) | Research new PI theories post-Theresa discipline and corr. w/Matt |
| 1/24/2019 | Angus Love | 2 | Interview/Advise Client (CB) | client called, updated her, discussed with colleagues |
| 1/28/2019 | Jim Davy | 6 | Document Preparation/Review (G) | Research/write Motion for a Protective Order and Br. re: Theresa's deposition and conversations w/Matt |
| 2/7/2019 | Su Ming Yeh | 0.2 | Letter/Correspondence (F) | Emails w-MF re possible MIL on witnesses |
| 2/8/2019 | Su Ming Yeh | 1 | Document Preparation/Review (G) | Prep for hearing, discuss hearing strategy w-MF, discuss arg against stay |
| 2/8/2019 | Su Ming Yeh | 0.4 | Document Preparation/Review (G) | Review Ds motion to stay, emails/texts to JD, MF re motion |
| 2/10/2019 | Jim Davy | 5 | Prepare for Hearing (J) | Strategy w/Su Ming and Matt; research stay arguments; review records for exhaustion stuff |
| 2/27/2019 | Su Ming Yeh | 0.3 | Document Preparation/Review (G) | Review court order, download R.26(f) form, discuss case management conference w-AL |
| 2/27/2019 | Su Ming Yeh | 1.1 | Document Preparation/Review (G) | Draft and discuss initial disclosures w-AL, MF |

| 3/28/2019 | Su Ming Yeh | 0.8 | Document Preparation/Review (G) | Review discovery draft, emails to MF |
|---|---|---|---|---|
| 4/8/2019 | Matthew A. Feldman | 2 | Case Related General (A) | review MTD decision and emails to cl., WLP, AMK |
| 4/11/2019 | Su Ming Yeh | 0.6 | Document Preparation/Review (G) | Review/research motions to amend Compl, email and discuss w-MF |
| 4/17/2019 | Matthew A. Feldman | 0.5 | Case Related General (A) | write up research assignment for intern & discuss w/ SMY |
| 4/18/2019 | Su Ming Yeh | 0.8 | Letter/Correspondence (F) | Email sample stips to MF, review draft stipulation, discuss w-MF |
| 4/26/2019 | Su Ming Yeh | 1.2 | Conference (C) | Mtg w-AL, MF re Victory discovery, deadlines, depositions, scheduling, clients |
| 4/26/2019 | Su Ming Yeh | 0.6 | Document Preparation/Review (G) | Review draft discovery requests, discuss w- MF, discuss dep strategy w- MF |
| 4/29/2019 | Su Ming Yeh | 1.2 | Document Preparation/Review (G) | Draft 30(b)(6) notice, discuss w-MF, email w- MF, AL |
| 4/30/2019 | Matthew A. Feldman | 0.2 | Legal Research (H) | time to respond to Ds' motion to seal & email to SMY & AL |
| 5/6/2019 | Su Ming Yeh | 0.1 | Letter/Correspondence (F) | Emails w-MF re protective order stip |
| 5/8/2019 | Su Ming Yeh | 0.1 | Letter/Correspondence (F) | Emails w-MF re stip of dismissal (for Dealba) |
| 5/12/2019 | Su Ming Yeh | 0.1 | Telephone Conference (E) | Call w-MF re transcripts/exhibits for hearing |
| 5/13/2019 | Alexandra Morgan-Kurtz | 0.3 | Case Related General (A) | convo MF, SMY issues, rvw MTC |
| 5/22/2019 | Matthew A. Feldman | 0.3 | Letter/Correspondence (F) | letter to cl re PI decision, print materials to send, email to Becca to translate |
| 5/29/2019 | Su Ming Yeh | 0.4 | Document Preparation/Review (G) | Review D motion to stay, email discuss w- MF, AL; email to AMK re motion |

| 5/30/2019 | Matthew A. Feldman | 0.2 | Case Related General (A) | review interns' notes on transcripts and give feedback |
|---|---|---|---|---|
| 5/30/2019 | Su Ming Yeh | 0.2 | Investigation of Facts (D) | **Discuss CRC w-AL, MF** |
| 5/30/2019 | Su Ming Yeh | 1.6 | Letter/Correspondence (F) | Emails w-colleagues re issues of stays pending appeal; review their suggestions; discuss issue w-MF |
| 6/3/2019 | Su Ming Yeh | 0.2 | Document Preparation/Review (G) | Review Ct's denial of Ds motion to stay opinion; discuss w-MF |
| 6/4/2019 | Su Ming Yeh | 0.3 | Document Preparation/Review (G) | Review Ds filed affidavit/plan, discuss strategy w-MF, AL |
| 6/12/2019 | Matthew A. Feldman | 0.2 | Telephone Conference (E) | phone call w/ opposing counsel re contempt and follow up email to AL & SMY |
| 6/12/2019 | Su Ming Yeh | 0.6 | Document Preparation/Review (G) | Review/edit motion for contempt; discuss issues related to br w-MF |
| 6/13/2019 | Su Ming Yeh | 0.6 | Conference (C) | Mtg w-MF, AM, GR re Stmt of Facts |
| 6/15/2019 | Su Ming Yeh | 2.2 | Document Preparation/Review (G) | Draft response to statement of facts for SJ response, discuss w-MF |
| 6/21/2019 | Su Ming Yeh | 0.2 | Document Preparation/Review (G) | Discuss petition for writ w-MF, review petition |
| 6/24/2019 | Su Ming Yeh | 0.8 | Document Preparation/Review (G) | Review, edit reply to class cert motion, discuss a fn w-MF |
| 6/25/2019 | Matthew A. Feldman | 0.3 | Case Related General (A) | review orders re continuance and 3d Cir briefing and email WLP |
| 6/25/2019 | Su Ming Yeh | 0.3 | Telephone Conference (E) | Discuss motion for contempt hearing w- MF; strategy, timing, required memo |
| 6/27/2019 | Su Ming Yeh | 0.1 | Letter/Correspondence (F) | Review colleague email re contempt |
| 6/27/2019 | Su Ming Yeh | 0.4 | Telephone Conference (E) | Consult colleague re contempt |

| Date | Name | Hours | Category | Description |
|---|---|---|---|---|
| 6/27/2019 | Su Ming Yeh | 0.3 | Telephone Conference (E) | Consult colleague re contempt |
| 6/28/2019 | Su Ming Yeh | 0.2 | Letter/Correspondence (F) | Emails to AL re update on contempt hearing, strategy |
| 7/2/2019 | Su Ming Yeh | 0.2 | Legal Research (H) | Legal research and discuss w-MF re daily rate of possible sanctions to P |
| 7/8/2019 | Su Ming Yeh | 0.2 | Letter/Correspondence (F) | Review ct order on SJ/class cert, email w-MF re issues from order |
| 7/9/2019 | Su Ming Yeh | 0.5 | Letter/Correspondence (F) | Read Ct's opinion on SJ/Class cert, discuss w-MF via email |
| 7/11/2019 | Su Ming Yeh | 0.2 | Letter/Correspondence (F) | Review ct orders on contempt, plan; emails w-MF re timing of inspection, objections |
| 7/15/2019 | Angus Love | 3 | File Maintenance (AA) | **review orders, consult colleagues** |
| 7/16/2019 | Angus Love | 2 | File Maintenance (AA) | **review court order, consult with colleagues** |
| 7/19/2019 | Su Ming Yeh | 0.1 | Document Preparation/Review (G) | Review Ct's order granting stay, email to MF, AL |
| 7/29/2019 | Matthew A. Feldman | 0.4 | Case Related General (A) | **email external colleague and prep for call** |
| 8/1/2019 | Matthew A. Feldman | 3.7 | Travel (N) | to/from Berks County Jail for inspection; strategy discussion w/ SMY |
| 8/1/2019 | Su Ming Yeh | 3.7 | Travel (N) | Travel to BCJS inspection/tour and discuss case strategy w-MF |
| 8/16/2019 | Su Ming Yeh | 0.8 | Document Preparation/Review (G) | Review D reply brief, discuss w-MF |
| 8/23/2019 | Su Ming Yeh | 0.8 | Document Preparation/Review (G) | Review discovery production from Ds, emails to opp counsel; emails to co-counsel re docs |

35

| 8/28/2019 | Su Ming Yeh | 0.6 | Letter/Correspondence (F) | Emails to colleagues re moot argument |
|---|---|---|---|---|
| 9/3/2019 | Su Ming Yeh | 0.2 | Document Preparation/Review (G) | Review motion for ext of time; discuss w- MF |
| 9/23/2019 | Matthew A. Feldman | 0.5 | Case Related General (A) | discuss response to statement of facts w/ Noah (extern) |
| 9/25/2019 | Matthew A. Feldman | 0.6 | Case Related General (A) | discuss response to statement of facts w/ Noah (extern) |
| 9/29/2019 | Su Ming Yeh | 0.2 | Document Preparation/Review (G) | Discuss extension request w-MF |
| 10/4/2019 | Su Ming Yeh | 0.2 | Telephone Conference (E) | Call w-MF re brief, continuance request, trial prep |
| 10/7/2019 | Matthew A. Feldman | 0.2 | Case Related General (A) | discuss jury instructions w/ Noah |
| 10/8/2019 | Su Ming Yeh | 0.1 | Document Preparation/Review (G) | Review ct order for conference, emails w- AL, MF |
| 10/11/2019 | Matthew A. Feldman | 0.4 | Case Related General (A) | discuss jury instructions w/ Noah |
| 10/15/2019 | Matthew A. Feldman | 0.6 | Case Related General (A) | review draft jury instructions and email Noah w/ follow-up assignment |
| 10/15/2019 | Su Ming Yeh | 0.2 | Letter/Correspondence (F) | Emails re legal visits w- clients |
| 10/16/2019 | Matthew A. Feldman | 3.5 | Travel (N) | to/from BCJ & strategy discussions w/ SMY |
| 10/16/2019 | Su Ming Yeh | 3.5 | Travel (N) | Travel to-from BCJS and discuss case strategy/witness prep w- MF |
| 10/18/2019 | Su Ming Yeh | 3.6 | Document Preparation/Review (G) | Discuss w-MF and draft pre-trial memo |
| 10/25/2019 | Su Ming Yeh | 0.3 | Document Preparation/Review (G) | Review Ds MIL; discuss w-MF |
| 10/30/2019 | Matthew A. Feldman | 1.5 | Document Preparation/Review (G) | download and review MIL filings; email to AMK |

| Date | Name | Hours | Category | Description |
|---|---|---|---|---|
| 10/30/2019 | Su Ming Yeh | 0.3 | Document Preparation/Review (G) | Review Ct orders and discuss w-MF |
| 10/31/2019 | Alexandra Morgan-Kurtz | 0.8 | Case Related General (A) | rvw PT stmts, M2Bi R, ems re trial prep |
| 10/31/2019 | Matthew A. Feldman | 0.2 | Case Related General (A) | email to ST re setting up visits with witnesses |
| 10/31/2019 | Matthew A. Feldman | 0.7 | Document Preparation/Review (G) | download and review MIL orders; email to AMK & SMY |
| 11/4/2019 | Matthew A. Feldman | 12 | Prepare for Hearing (J) | prep witnesses for trial; discuss strategy w/ SMY |
| 11/4/2019 | Su Ming Yeh | 9 | Prepare for Hearing (J) | Prep 2 witnesses, T.Victory (non-dmgs claim) in diff locations in Berks, incl travel w-case strategy discussions w-MF |
| 11/5/2019 | Su Ming Yeh | 0.2 | Document Preparation/Review (G) | Discuss legal visits w-class members w-MF |
| 11/6/2019 | Cory Ward | 10.3 | NA | Prepare, travel, and participate in depositions of F. Quainoo and N. Mankoski; participate in strategy call; draft summary regarding impact of *Garrett* on Plaintiff's claims |
| 11/6/2019 | Matthew A. Feldman | 3.4 | Travel (N) | to/from Berks County Jail for witness prep & strategy discussions w/ SMY |
| 11/6/2019 | Su Ming Yeh | 7.5 | Interview/Advise Client (CB) | Interview Trusty women at BCJS, incl travel and case strategy/witness prep discussions w-MF |
| 11/7/2019 | Su Ming Yeh | 0.4 | Document Preparation/Review (G) | **Discuss letter w-MF, revise, email to opp counsel** |
| 11/8/2019 | Su Ming Yeh | 1.2 | Telephone Conference (E) | Call w-legal team re D Notice, MIL, dmgs issues |

| Date | Name | Hours | Category | Description |
|---|---|---|---|---|
| 11/8/2019 | Su Ming Yeh | 1.7 | Document Preparation/Review (G) | Review draft of dmgs brief, edit/legal research on expert issue; discuss w-MF, AMK |
| 11/9/2019 | Su Ming Yeh | 3.9 | Telephone Conference (E) | Call w- legal team re witness' tmy |
| 11/10/2019 | Matthew A. Feldman | 3.5 | Travel (N) | to Reading & Lenhartsville for witness prep; strategy discussions w/ SMY |
| 11/10/2019 | Su Ming Yeh | 12 | Prepare for Hearing (J) | Prep 3 witnesses in Berks County (prep time for non-dmgs claim for T.Victory), incl travel w- strategy discussion/witness prep w-MF |
| 11/11/2019 | Cory Ward | 9.7 | NA | Review trial exhibits and preliminary injunction hearing transcripts; research case law; prepare for trial; prepare direct examination notes; confer with trial team regarding strategy. |
| 11/11/2019 | Su Ming Yeh | 1.1 | Prepare for Hearing (J) | Discuss trial issues w-MF, review proposed prelim instructions |
| 11/13/2019 | Cory Ward | 10.8 | NA | Prepare for and attend trial; direct exam of F. Quainoo; prepare for cross examinations; confer with trial team regarding strategy for following day of trial. |
| 11/13/2019 | Su Ming Yeh | 1.1 | Prepare for Hearing (J) | **Legal team prep mtg (excludes time on dmgs claim)** |
| 11/13/2019 | Su Ming Yeh | 1 | Prepare for Hearing (J) | **Legal team prep mtg (on dmgs claim only)** |
| 11/14/2019 | Cory Ward | 6.0 | NA | Prepare for and participate in trial; confer with trial team regarding strategy |

| | | | | for<br>remaining witnesses. |
|---|---|---|---|---|
| 11/14/2019 | Cory Ward | 4.5 | NA | Participate in trial; confer with trial team regarding strategy |
| 11/14/2019 | Su Ming Yeh | 2 | Prepare for Hearing (J) | **Legal team prep mtg** |
| 11/15/2019 | Cory Ward | 3.0 | NA | Participate in trial; confer with trial team regarding strategy |
| 11/15/2019 | Su Ming Yeh | 1 | Prepare for Hearing (J) | Discuss trial w-legal team, discuss trial feedback, legal issues re prosp relief |
| 11/15/2019 | Su Ming Yeh | 1.6 | Prepare for Hearing (J) | Prep for trial day 4; discuss prosp relief w-MF |
| 11/19/2019 | Alexandra Morgan-Kurtz | 0.3 | Legal Research (H) | ems re PLRA & VC |
| 12/9/2019 | Su Ming Yeh | 1.1 | Document Preparation/Review (G) | Review edit brief on prosp relief; call w- MF re filing on ECF |
| 1/29/2020 | Su Ming Yeh | 0.2 | Letter/Correspondence (F) | Emails w-MF, AMK re fee petition |
| 2/19/2020 | Su Ming Yeh | 0.3 | Letter/Correspondence (F) | Respond to MF email re fee petition |
| **Total = 204.1 Hours** | | | | |

As with vagueness, we sustain Berks County's objections to "consults" without a purpose or subject. We deduct the **bolded** time entries equating to 10.1 hours spent on consults with no described purpose. We deduct $ 2,431.55 from the petition for these undescribed consults.

But we overrule objections based solely on colleagues discussing matters. Class Counsel undertook a difficult task in challenging a long-entrenched policy at Berks County where the elected officials and those charged with working with inmates refused to appreciate the constitutional problems. Berks County refused to follow our Orders. Berks County elected to fight at every turn. Berks County retained experienced civil rights lawyers who tried every argument. We expect those lawyers consulted with each other. We saw them consult with each

other in the courtroom, including handing notes to the questioning lawyer during witness examination. We expect this type of collaboration. A single lawyer would have a herculean task in answering Berks County's resources and law firm.

### ii. We overrule the objection to excessive time on three motions.

Berks County objects to the amount of time counsel for Mses. Victory and Velazquez-Diaz spent on certain motions filed over the course of the litigation. Without citing precedent, Berks County specifically requests a two-third reduction in three separate motions: (1) 51.9 hours spent between three attorneys drafting the initial motion for injunctive relief; (2) 60.1 hours drafting their response to Defendants' Motion for summary judgment; and, (3) 79 hours on the motion for summary judgment for the Class claims. Berks County claims many of the entries billing time for these briefs unreasonably includes two or three attorneys.

We overrule this objection to the amount of time Class Counsel considered advisable to meet their professional obligations on these three case-defining submissions. The initial injunction defined the case, the scope of discovery, and the need for immediate relief given the relatively shorter-term sentences for inmates classified as Trusty. Defendants' Motion for summary judgment raised a great variety of issues; Class Counsel argued to preserve its integral Equal Protection claims based largely on inmate recollections and having to work with records created and maintained solely by Berks County. Class Counsel also needed to invest time to sustain the Class claims. As demonstrated in the number of our extensive memoranda, the parties presented well-considered legal positions. Given Berks County's strategy and amount of resources it invested in its defense, we will not second-guess experienced counsels' work effort so long as it is adequately described. Berks County challenged the descriptions and we sustained many of those

vagueness objections. We will not now further discount with second-guessing the lawyers' professional judgment as to necessary resources.

### iii. We overrule objections to multiple attorneys at same hearing.

Berks County objects to excessive time billed by counsel for Mses. Victory and Velazquez-Diaz by having multiple attorneys attend trial hearings and depositions. It argues five attorneys appearing for trial is excessive. Berks County also points to the preliminary injunction hearings where three attorneys attended for the Plaintiffs. Berks County also cites multiple attorneys appearing at depositions and site inspections.

Berks County argues five attorneys appearing for trial is excessive because "[t]wo of these attorneys were responsible for a single witness and did not conduct any other part of the trial." They note each of the five attorneys prepared and attended trial and billed a total of 577.74 hours (115.59 hours each). They ask for the total number of hours in preparation and trial be reduced to the average for three attorneys for a total of 346.64 hours.

As with the objection to time invested in motions, we will not second-guess lawyers' professional judgment as to the need for an attorney at a hearing. We already reduced 145.5 trial "prep" or "trial" hours by 50% (140 hours of vague entries and 4.1 hours of consulting colleague time) due to vagueness. Berks County does not explain why multiple attorneys appearing at depositions, hearings, or site inspections is necessarily excessive. They ask for a general reduction for these entries. We decline to do so further.

## III. Conclusion

Berks County's objections to attorneys billing for paralegal or clerical tasks and for vagueness are well grounded. Its objections seeking to reduce the fees because two Class members are not prevailing parties is not well grounded. Either are its objections characterizing this hard-

fought equitable relief success as "limited" or challenging the allocation of attorneys on motions, depositions, and hearings.  Berks County chose to pay its lawyers to vigorously (at one point to a civil contempt finding) defend a policy it later changed on the trial eve while knowing the civil rights plaintiffs, should they prevail, are entitled to reasonable fees and costs.  Having made its choice of litigation strategies, we will not now second-guess Class Counsel's need to represent their clients with vigor as well.  We grant the Class Counsel's petition for reasonable fees and costs in large part in the accompanying Order.  Berks County shall pay, as part of the Judgment entered today, $507,330.61 consisting of $503,939.20 in reasonable attorney's fees and $ 3,399.41 in uncontested costs.

---

[1] The acrimonious tone during the parties' progress resulted in our issuing several extensive memoranda from January 2019 until January 2020.  Non-parties interested in the procedural history, multiple disputes, including several appeals and a partial civil contempt (later vacated on other grounds), may look to several to our decisions on preliminary injunctive relief, motions to dismiss, class certification, civil contempt, summary judgment, and post-trial permanent injunctive relief.  *See e.g., Victory v. Berks Cnty.*, 355 F. Supp. 3d 239 (E.D. Pa. 2019), *appeal dismissed,* 789 F. App'x 328 (3d Cir. 2019); *Victory v. Berks Cnty.*, No. 18-5170, 2019 WL 2368579 (E.D. Pa. June 3, 2019); *Victory v. Berks Cnty.*, No. 18-5170, 2019 WL 3068991 (E.D. Pa. July 11, 2019), *rev'd* 789 F. App'x 328 (3d Cir. 2019); *Victory v. Berks Cnty.*, No. 18-5170, 2019 WL 5266147 (E.D. Pa. Oct. 17, 2019); *Victory v. Berks Cnty.*, No. 18-5170, 2020 WL 236911 (E.D. Pa. Jan. 15, 2020).

[2] ECF Doc. No. 114.

[3] *Id.*

[4] *Id.*

[5] *Id.*  Ms. Victory also alleged several Berks County employees retaliated against her in violation of the First Amendment.  We dismissed these claims on summary judgment, and her counsel does not seek fees for litigating this claim.

[6] ECF Doc. No. 343-3.

[7] ECF Doc. No. 343-4.

[8] ECF Doc. No. 343-3.

[9] ECF Doc. Nos. 343-2, 343-6.

[10] ECF Doc. No. 343-5.

[11] ECF Doc. No. 343-4.

[12] ECF Doc. Nos. 343-4, 343-6.

[13] ECF Doc. No. 1.

[14] ECF Doc. No. 9.

[15] ECF Doc. No. 88, at p. 3.

[16] ECF Doc. No. 39.

[17] ECF Doc. No. 72.

[18] ECF Doc. No. 47.

[19] *Id.* at ¶ 24.

[20] ECF Doc. No. 53.

[21] ECF Doc. No. 71.

[22] ECF Doc. No. 101, at 3.

[23] ECF Doc. No. 92.

[24] ECF Doc. No. 114.

[25] ECF Doc. No. 115.

[26] ECF Doc. No. 165, at 3.

[27] ECF Doc. No. 135.

[28] ECF Doc. No. 137. As detailed in our Memorandum granting a permanent injunction (*see* ECF Doc. No. 338), Berks County also appealed our July 16, 2019 Order compelling compliance with the preliminary injunction (*see* ECF Doc. No. 197), our July 11, 2019 Order finding Berks County and Warden Janine Quigley in civil contempt (*see* ECF Doc. No. 199), and our August 7, 2019 Order granting preliminary injunctive relief to the Class (*see* ECF Doc. No 218). Our Court of Appeals consolidated four appeals for argument and disposition and resolved the fifth summarily.

[29] ECF Doc. No. 114.

[30] ECF Doc. No. 148.

[31] ECF Doc. Nos. 185, 186.

[32] ECF Doc. No. 187.

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] ECF Doc. No. 114.

[37] ECF Doc. No. 150.

[38] *Id.*

[39] ECF Doc. No. 157.

[40] ECF Doc. No. 160, Ex. A.

[41] ECF Doc. No. 188.

[42] ECF Doc. No. 191.

[43] ECF Doc. No. 191.  Our Court of Appeals vacated our contempt Order after finding the Order forming the basis of the contempt—the injunction awarded to Ms. Velazquez-Diaz—was without legal effect because the parties did not seek needs-narrowness-intrusiveness findings required to enter preliminary prospective relief under the PLRA. *Victory v. Berks County*, Nos. 19-1329, 19-2193, 19-2648, 19-2695, 2019 WL 5095755 (3d Cir. Oct. 11, 2019).

[44] ECF Docs. No. 222, 225.

[45] ECF Doc. No. 221.

[46] ECF Doc. No. 246.

[47] ECF Doc. No. 247.

[48] *Id.* at 31.

[49] ECF Doc. No. 256.

[50] ECF Doc. No. 257.

[51] ECF Doc. Nos. 294, 296.

[52] ECF Doc. No. 343-7; ECF Doc. No 343-8.

[53] ECF Doc. No. 345, at p. 69.

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] ECF Doc. No. 314.

[58] ECF Doc. No. 297.

[59] ECF Doc. No. 306.  Friday, November 8 was the last business day before the Veterans Day Weekend and trial beginning on November 12, 2019.

[60] ECF Doc. No. 321.

[61] *Id.*

[62] ECF Doc. No. 323.

[63] ECF Doc. Nos. 329, 330, 331, 332.

[64] *Id.*

[65] ECF Doc. No. 346.

[66] ECF Doc. Nos. 328, 333.

[67] ECF Doc. No. 339.

[68] *Id.*

[69] *Truesdell v. Phila. Housing Auth.*, 290 F.3d 159, 163 (3d Cir. 2002).

[70] The Class and Ms. Victory submit attorney declarations (an affidavit and individual timesheet) from Attorneys Love, Yeh, Feldman, Davy, Morgan-Kurtz, Sachse, and Ward.  ECF Doc. No. 343.  The Class and Ms. Victory then, upon our request, submitted a combined attorney timesheet. ECF Doc. No. 345.  We rely on this combined attorney timesheet throughout this Memorandum.

We also rely on the Class and Ms. Victory's submission in their Motion for "attorneys' fees and costs in the amount of $541,565.11" including $3,399.41 in costs. *See* ECF Doc. No. 342. In their reply, the Class and Ms. Victory withdraw $1,609.95 in requested fees responsive to Berks County's objections. They "request [an] award of attorneys' fees in the amount $540,155.46." ECF Doc. No. 347. While the Class and Ms. Victory do not reference costs in this updated figure, we must calculate their attorneys' fee and costs requests by looking to the initial request net of the withdrawn fees.

[71] ECF Doc. No. 346.

[72] *Dee v. Borough of Dunmore*, 548 F. App'x 58, 60 (3d Cir. 2013).

[73] *Id.* (citing *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992)).

[74] *Id.* (citing *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983)).

[75] *Id.*

[76] *Id.* (citing *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990)).

[77] *Id.* (citing *Rode*, 892 F.2d at 1183).

[78] ECF Doc. No. 343, at 7 (citing 42 U.S.C. § 1997e(d)).

[79] Ms. Victory argues the Prison Litigation Reform Act rate cap does not apply to her claims because she was no longer a prisoner when she and Ms. Velazquez-Diaz filed the second amended complaint. ECF Doc. No. 343, at 8 (citing *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019), *cert. pending*, No. 19-867 (filed Jan. 8, 2020)). In *Garrett*, our Court of Appeals ruled a prisoner who amended his complaint under Rule 15 after his release did not need to meet the PLRA exhaustion requirement because he was no longer a "prisoner" as defined by the Act. *Garrett*, 938 F.3d at 82 (interpreting 42 U.S.C. § 1997e(a)). Ms. Victory argues the reasoning in *Garrett* applies to the attorney's fee provision of the Act which also limits fees requested by a "prisoner." 42 U.S.C. § 1997e(d)(1). Berks County does not dispute Ms. Victory's argument; it chose not to brief the issue. Without a stated objection from Berks County, we apply the rates proposed by Ms. Victory and decline to raise a *sua sponte* objection. Thus, while we consider the requested rates and stated objections to certain requests, we need to not specifically address *Garrett*'s applicability.

[80] Because Attorney Feldman's fair market rate does not exceed the PLRA rate cap, Mses. Victory and Velazquez-Diaz do not separately delineate how many hours he spent on Ms. Victory's compensatory damages claim. Based on Attorney Feldman's timesheet, we estimate he spent approximately 45.3 hours on the individual damages claim amounting to approximately $10,000.

[81] *United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 211-12 (3d Cir. 2000).

[82] *Id.* (quoting *Bell v. United Princeton Props.*, 884 F.2d 713, 719 (3d Cir. 1988)).

[83] *Id.* (quoting *Bell*, 884 F.2d at 719).

[84] For instance, Berks County does not raise a specific objection to Dechert LLP lawyers serving as Class Counsel despite never seeking our approval for Class Counsel status under Rule 23. *See generally* ECF Doc. No. 346. As observed by Judge Bartle recently, a lawyer who assists class counsel with research on a contract basis cannot claim entitlement to class fees. *Langer v. Capital One Auto Fin.*, No. 16-6130, 2019 WL 6348445, at *2 (E.D. Pa. Nov. 27, 2019); *but see Aamco Automatic Transmissions, Inc. v. Tayloe*, 82 F.R.D. 405, 417–18 (E.D. Pa. 1979) (noting "[f]or purposes of recovering attorneys' fees, there is no principled distinction between attorneys who are counsel of record and those who are not[.]"). While Dechert LLP's efforts may be distinguishable from *Langer*, we do not consider its holding *sua sponte*.

[85] "After calculating the lodestar," we "may deviate from it, but only in the 'rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Souryavong v. Lackawanna Cty.*, 872 F.3d 122, 128 (3d Cir. 2017) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010)). We may deviate "on the back end of a lodestar's calculation [by applying the *Johnson* factors], as long as they are not already subsumed in the lodestar calculation." *Id.* Berks County does not separately urge us to apply the *Johnson* factors, and we consider our lodestar analysis to "subsume" potential arguments raised under the *Johnson* factors. Our lodestar adequately accounts for all properly considered factors in determining a reasonable fee.

[86] ECF Doc. No. 93.

[87] *Truesdell v. Phila. Housing Auth.*, 290 F.3d 159, 163 (3d Cir. 2002).

[88] *Hensley*, 461 U.S. at 433.

[89] *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604-05 (2001).

[90] *Raab v. City of Ocean City, New Jersey*, 833 F.3d 286, 293 (3d Cir. 2016) (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)).

[91] *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

[92] *Id.* (citing *Buckhannon*, 532 U.S. at 604).

[93] *Raab*, 833 F.3d at 293.

[94] *See* ECF Doc. No. 184.

[95] *Catlett v. Missouri Highway & Transp. Comm'n*, 828 F.2d 1260, 1270 (8th Cir. 1987) (citing *Hensley*, 461 U.S. at 429).

[96] *Id.*

[97] *Id.*

[98] *Id.*

[99] The Class and Ms. Victory concede that the time expended consulting with a non-testifying expert can be excluded from their fee award. But they argue Defendants miscalculated the number of applicable hours by including entries for time spent talking to Ms. Victory's treating physician, not a potential expert witness. We agree with the distinction and grant the objection to the 4.3 conceded hours. At an hourly rate of $220.50, this is a reduction of $948.15. We do not include this amount in the requested fee above.

[100] ECF Doc. No. 346, at p. 9.

[101] *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989) (internal quotations omitted).

[102] *Id.*

[103] *Id.* at 288 n. 10.

[104] *Id.*

[105] *Id.*

[106] *Buss v. Quigg*, No. 01-3908, 2002 WL 31262060, at *10 (E.D. Pa. Oct. 9, 2002), *aff'd*, 91 F. App'x 759 (3d Cir. 2004).

[107] *Truesdell*, 290 F.3d at 166 (quoting *Hensley*, 461 U.S. at 433).

[108] ECF Doc. No. 346, at 8.

[109] *Truesdell,* 290 F.3d at 166.

[110] *Raab*, 833 F.3d at 293 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989)).

[111] *Hensley,* 461 U.S. at 435.

[112] *Id.*

[113] *Graham v. Sauk Prairie Police Com.*, 915 F.2d 1085, 1109-10 (7th Cir. 1990).

[114] *Hensley,* 461 U.S. at 435.

[115] ECF Doc. No. 346.

[116] *Washington v. Phila. Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1041 (3d Cir. 1996).

[117] *Id.* (quoting *City of Riverside v. Rivera*, 477 U.S. 56 (1986)) (Brennan, J., plurality).

[118] *Id.*

[119] *Lohman v. Duryea Borough*, 574 F.3d 163, 169 (3d Cir. 2009) (emphasis omitted).

[120] Mses. Victory and Velazquez-Diaz concede the entries consisting only of the word "misc." and are not submitted under the "Consult with Colleagues" activity code are insufficiently specific and agree that these entries should be disregarded. These entries total 3.0 hours. At an hourly rate of $220.50, this is a reduction of $661.50. We do not include this figure in the requested $ 536,756.05 in attorney's fees.

[121] *Clemens v. New York Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 401 (3d Cir. 2018).

[122] *Id.*

[123] *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F.App'x 93, 100-01 (3d Cir. 2006) (quoting *Washington*, 89 F.3d at 1037).

[124] *Washington*, 89 F.3d at 1037.

[125] *W. Va. Univ. Hosps. v. Casey*, 898 F.2d 357, 365 (3d Cir. 1990).

[126] *UAW Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 291 (3d Cir. 2007).

[127] Berks County references 266.9 hours consulting with colleagues in their briefing. ECF Doc. No. 346, at 10. Berks County then identifies its specific consulting objections in Exhibit 5. *See id.* at Ex. A-5. We study the objections and calculate the total consulting hours to be 204.3 (albeit excluding conceded or otherwise granted objections). To the extent Berks County objects to consulting hours not identified in Exhibit A-5, we overrule the objection for failing to sufficiently specify the grounds for the objection.

[128] *Citibank, N.A. v. Hicks*, No. 03-2283, 2004 WL 1895189, at *2 (E.D. Pa. Aug. 24, 2004).

[129] ECF Doc. No. 347, at 11 (citing *City of Riverside*, 477 U.S. at 575; *Commc'n Workers of Am. v. Ector Cnty. Hosp. Dist.*, 392 F.3d 733, 749-50 (5th Cir. 2004); *Brown v. Lawn Enforcement Agency, Inc.*, 369 F. Supp. 3d 1224, 1229 (N.D. Fla 2019)).